221 So.2d 399

**Harold BARNES**

v.

**STATE.**

**8 Div. 177.**

Court of Appeals of Alabama.

Jan. 21, 1969.

Rehearing Denied Feb. 11, 1969.

---

Ralph E. Slate; Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Harold Barnes was indicted for murder in the first degree, convicted of murder in the second degree and sentenced to serve a term of twenty years in the penitentiary. He appeals.

The State's testimony tended to show that Harold Barnes, his uncle, Benford Lowery, and Kyle Clark were drinking together during the evening of October 22, 1967. They went to defendant's house where they kept drinking. Defendant and Kyle Clark sat on the floor and engaged in Indian wrestling, with Lowery acting as referee. Defendant won the match. After they stopped Indian wrestling Clark began calling defendant an insulting name and

later applied the opprobrious term to defendant and his wife. Defendant told him to hush, but deceased kept saying it, whereupon defendant went to the kitchen and got a .22 pistol, then took shells from a drawer in the bedroom, loaded the pistol and shot Clark in the back of the head while he was still sitting on the floor. Deceased died from the bullet wound some ten hours later.

No testimony was introduced by defendant.

Defendant's motion for a continuance, made at arraignment, on the ground of insufficient time for his attorneys to prepare the case for trial was denied.

■ The granting or refusing of a continuance is in the trial court's discretion and is not reviewable except for gross abuse. Walker v. State, 265 Ala. 233, 90 So.2d 221; Pendley v. State, 43 Ala.App. 140, 181 So.2d 624.

The argument in support of the contention that the trial court abused its discretion is that defendant's attorneys, one of whom was court appointed and the other employed by defendant's relative, had in which to prepare for trial, one week after arraignment, thirteen days after indictment, four of which were Saturdays and Sundays.

■ In Walker v. State, supra, the defendant was convicted of second degree murder and sentenced to 99 years in the penitentiary. The Supreme Court held that refusal to grant a continuance was not error where the court appointed attorney had ten days in which to prepare for trial. We find no abuse of discretion in the instant case.

Benford Lowery testified he and defendant went next door to Lowery's brother's house immediately after the shooting. He stated, without objection, that defendant made the statement at Lowery's house that he hoped Kyle Clark died, "that if he didn't, he would have to do it again."

Hyram Cook, Chief Deputy Sheriff of Lawrence County testified he went to de-

fendant's house the night of October 22nd in response to a call. Clark was in an ambulance when he arrived. He went next door to Lowery's house and saw defendant there. There were eleven people in the room and defendant talked to "all of us in there." At that time Cook did not tell Barnes he was a law enforcement officer. Barnes "began talking and telling what happened and Mr. Benford Lowery spoke up and said for them to be careful, that I was a Deputy Sheriff and that he knew me, that I had arrested him one time." Barnes said it didn't make any difference that he was going to tell what happened anyhow. Thereupon the District Attorney said: "Go ahead and tell what he said."

Defense counsel interposed the following objection:

"Now, Your Honor, we object at this time to any statement made by the Defendant at that time unless a proper predicate is laid and, further, unless it's shown that he was in a capacity to understand or reasonably understand what he was saying and because of the previous evidence as to his condition."

The Court said: "Well, I am going to have to know a little bit more about this to rule on it. * * * Let me see you lawyers in my office just a minute."

The record states: "Whereupon the Court and Counsel retired to the Judge's chamber to confer and after a short interval returned to the courtroom and the following procedings were had to-wit:"

Witness Cook further testified he went to Lowery's with Deputy Sheriff Glenn Pace, and Barnes was pointed out to them. Pace told the witness to stay in the room while he went to call the sheriff and Mr. Elliott. Witness sat in a chair beside Barnes and "he went to telling what happened."

This question was asked:

"Q. What, if anything, did you hear Mr. Barnes say?"

Defense counsel objected, "on the grounds previously stated and would like an opportunity to voir dire."

The Court: "All right. Voir dire."

During voir dire examination, not shown to have been conducted outside the presence of the jury, the following occurred:

In response to questioning by defense counsel the witness testified he did not know Barnes at the time he went in the house. Witness sat down by defendant for awhile and Barnes was talking about the shooting. After he had told part of what had taken place, witness asked him what happened. At that time Barnes was drunk, but he wasn't "down drunk."

The following then transpired:

"In your judgment, was he at that stage of intoxication that he rationally knew what he was doing or did not know what he was doing?"

The State objected and the court said:

"I will sustain it as to whether he knew what he was doing. You can tell what he looked like and answer questions about his appearance, but whether he knew what he was doing that is one of the questions that—."

"Q. Did he appear to be in control of his faculties? Did he appear to talk rational to you or did he appear to be so intoxicated that he did not appear to know what he was doing?"

The State's objection was sustained.

The record at this point shows direct examination of the witness was resumed.

The District Attorney said:

"Go ahead and tell us what was said."

No objection was interposed, and the witness answered:

"He said him and Benford Lowery and Mr. Clark had been over at Van Watkins and came back to his house and sat down

in the floor there and was Indian wrestling and Clark called him a 'M F Liar.' And he told him not to say that again in front of his wife and children and he said, 'well, you and your wife are both M F liars.' And he said, 'I shot him right in the head.' * * * he said 'I will shoot him again' * * *. He said if he had it to do over he would shoot him again. He said at least a dozen times that he shot him in the head."

The witness stated that it was after defendant made the confessory statements that he asked him where he got the whiskey and whether deceased was facing defendant or had his back to him when he shot him. He was asked:

"Q. But prior to this when he made a statement to you, had you questioned him or asked him anything about what had happened there or did he just volunteer the statement?"

"A. He just volunteered the statement."

James T. Lowery testified he is defendant's cousin and that he lived about 100 feet from him; that defendant came to his house immediately after the shooting; that in the presence of witness and his uncles, Sam and Benford Lowery, defendant said, " 'I shot a man * * * I guess I have played the devil this time.' And my uncle said, 'Is that the gun' and he said, 'Yes.' And he said, 'Well, give it to me'. Well, he just handed him the gun there." The witness said that just after Clark was placed in the ambulance Mr. Cook and the other officers came. They asked where defendant was, "so we went on back over to my house," and went back into the room where defendant was. This question was asked:

"Now, what, if anything, did Harold Barnes—any statement he made in your presence there in the house?"

No objection was interposed, and witness answered:

"Well, he said, 'The man ought not to have said it,' said, 'He knowed he ought

not to have said it,' said if he had it to do over he would do it again." * * * He said, "If I had it to do over I would do it again."

This was said several times.

On cross examination the witness testified Benford Lowery and Harold Barnes were intoxicated.

Dexter A. Haney, a State investigator, testified he interrogated the defendant in the kitchen of the Lawrence County Jail; that prior to questioning defendant he told him he was a police officer investigating the killing; that he informed him of his rights; that he had a right to remain silent and did not have to make a statement; that he advised him of his rights to counsel; that he did not make him any promises of rewards; that he did not promise it would be better or worse for him if he did or did not testify; that defendant made a statement to him at that time.

Defense counsel's request to examine the witness on voir dire was granted. On voir dire the witness said the statement was made October 24, at 1:15 P.M.; that it was reduced to writing; that defendant read the statement and wrote in his own handwriting that he had read the statement and it was true.

Direct examination was resumed and at the request of the District Attorney the witness began reading the preliminary part of the statement.

At this point defense counsel objected solely on the ground that the preliminary portion did not show that defendant was warned of his right to counsel under the requirements of Miranda v. Arizona.

The witness stated:

"I informed him that under the Constitution of the United States and the laws of the State of Alabama, nobody could force him to make a statement that would incriminate himself. Any statement that he made could be used in Court; that he had a right to remain silent; he didn't have to tell me anything; he had a right to have a lawyer and if he didn't have the money to employ a lawyer, the Court would appoint a lawyer to represent him and he had a right to wait until the Court appointed a lawyer and he had an opportunity to consult with that lawyer before making any statement."

The Court overruled the objection. Defense counsel requested the right to again question the witness on voir dire, at which time the witness said defendant replied that he was going to tell the truth and that he didn't need a lawyer.

The Court then asked the witness if in his opinion defendant was under the influence of intoxicating beverages. The witness answered, "Not at that time, No, sir;" that so far as he knew defendant acted normal and did not appear to be sick. This was the first time he had ever seen defendant. The witness read the confession, in which the facts and circumstances surrounding the killing were related in substantially the same terms as those testified to by the witnesses.

■ It is our opinion the warning given to defendant prior to interrogation met the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. There was no objection that the predicate failed to show whether or not persons other than the officer were present.

■ We find no reversible error in the admission of Officer Cook's testimony as to defendant's statements made in his presence. No objection was interposed to questions concerning the confession after he was examined by defense counsel on voir dire.

[5] His testimony was not objectionable for a further reason. His uncontradicted testimony was that defendant's statements

were not made in answer to questioning by him.  Guenther v. State, 282 Ala. 620, 213 So.2d 679.

Appellant's counsel urges that reversible error was committed in refusing to allow Officer Cook to testify as to the appearance of the defendant at the time he made the statements in his presence.  The questions to which objections were sustained are set out hereinabove.  We find no error in the Court's rulings.

█  The first question called for a conclusion of the witness and invaded the province of the jury.  A witness may not testify that a person was so drunk as not to know what he was doing.  White v. State, 103 Ala. 72, 16 So. 63.

██  As to the second question, a witness may state that a person talked rationally, and testify as to his appearance and emotions.  Parrish v. State, 139 Ala. 16, 36 So. 1012;  Hamilton v. State, 281 Ala. 448, 203 So.2d 684, but may not testify that a defendant appeared to be so intoxicated that he did not appear to know what he was doing.  White v. State, supra.  Where a question seeks to elicit both competent and incompetent evidence, the court is not bound to separate the admissible from the inadmissible and will not be put in error for sustaining the objection to the question.  Williams v. State, 33 Ala.App. 304, 35 So.2d 562;  Brooks v. State, 32 Ala.App. 389, 27 So.2d 48;  Consford v. State, 15 Ala.App. 627, 74 So. 740.

Defendant's requested charge 16 was properly refused.  Gipson v. State, 262 Ala. 229, 78 So.2d 293;  Payne v. State, 261 Ala. 397, 74 So.2d 630.

█  Under the evidence presented in this case, defendant was not entitled to a charge as to manslaughter in the second degree. Williams v. State, 251 Ala. 397, 39 So.2d 37.

We find no reversible error in the record.

Affirmed.