HARRIS, Judge.
Appellant was convicted for violating the Alabama Uniform Controlled Substances Act and, because he had been convicted for violating this same act on two previous occasions, the Court sentenced him to 30 years imprisonment in the penitentiary. Prior to arraignment he was found to be indigent and the Court appointed counsel to represent him. At arraignment he pleaded not guilty. After sentence was imposed, he gave notice of appeal. He was furnished a free transcript and new counsel was appointed to represent him on appeal.
Omitting the formal parts the indictment reads as follows:
“The GRAND JURY of said County charge, that before the finding of this indictment JOHN DAVID LUKER whose name is to the Grand Jury otherwise unknown than as stated, did unlawfully possess codeine phosphate, phenobarbital, butalbital, a derivative of barbituric acid, phentermine hydrochloride, secobarbital, a derivative of barbituric acid, mazindol, pentobarbital sodium, a derivative of bar-bituric acid, against the peace and dignity of the State of Alabama.”
*1220 The testimony adduced by the State established that George Sullivan, Jr., a member of the Mobile Police Department for 16 years, was assigned to the Narcotics Division prior to April 6, 1975. He testified that he received a telephone call on the night of April 6, 1975, from a confidential informer that appellant was selling drugs at his apartment which was the southeast apartment located at 160 North Lafayette Street in the city and county of Mobile, Alabama. He stated that this informer was reliable and had given him information in the past that led to the arrest and conviction of three persons who were dealing in drugs and that at no time had this informer given him information that proved to be untrue. Sullivan was at home on the night of April 6, 1975, when this informer called him. He further testified that he received a second call on the morning of April 7, 1975, from the same informer in which he told Sullivan that appellant had the drugs in the bottom dresser drawer in the bedroom of his apartment and said that appellant represented the drugs to be codeine.
Before getting a search warrant Sullivan contacted Patrolman John Saxon and asked him to determine whether or not appellant was at home. Saxon checked and found appellant was at the apartment and he went before a municipal court judge in Mobile and signed an affidavit based upon the informer’s tip and procured a search warrant. Sullivan and several other officers went directly to this apartment. As the officers got within 50 feet of the apartment they observed a girl named Mary Prichard, whom Sullivan knew, running down an alley and as they approached the alley, the officers saw appellant coming out of the door of the apartment. Sullivan stated that he had seen appellant before and informed him that he had a search warrant and presented the warrant to him upon his request. Appellant opened the door and went in the apartment followed by Officers Sullivan, Pickett and Saxon, and the girl also entered the apartment.
Before Sullivan asked appellant any questions, he made the statement, “I have kidnapped this girl, Mary Prichard, here,” from Gateway Drug Rehabilitation Center. Sullivan then explained that Gateway was a rehabilitation center where “known drug addicts go for treatment to try and kick the habit” and he verified that Mary Prichard was living there at that time.
The search continued and Officer Pickett found a brown paper bag containing all kinds of narcotics in the bottom dresser drawer which was precisely the place the informer said the drugs were located. Sullivan looked in the bag and intended to arrest appellant but before he could say anything, appellant stated, “All of these drugs belong to me. She has no knowledge of the drugs whatsoever. They are all mine.” These statements made by the appellant were not objected to by the defense.
At this point a hearing was held outside the presence of the jury to determine the legality vel non of the search warrant. Appellant did not attack the sufficiency of the affidavit about the reliability of the informer but contended that the warrant was defective under the provisions of Title 15, Section 112, Code of Alabama 1940. Appellant contended that items 16 and 17 which were on the original return did not appear on the copy that was given to him, and therefore, the entire warrant must fail. This objection was overruled by the Court saying, “that the defendant’s constitutional rights were not violated in the execution of the search warrant and that the items recovered were recovered pursuant to lawful practices by the police department.” Items 16 and 17 were personal letters of appellant and Mary Prichard and there was no attempt to introduce these letters into evidence.
After the jury returned to the courtroom, Officer Sullivan identified a brown paper bag as being the one found in a bottom dresser drawer of the apartment searched. Sullivan then identified 18 exhibits as items which were in the brown paper bag.
Sullivan then testified that he started to advise the appellant of his Miranda rights but appellant “interfered with a spontaneous statement” that the narcotics were his *1221 and not Mary Prichard’s. At this time Sullivan advised appellant of his rights and he stated that he understood his rights, but that he had “nothing to say.”
Sullivan then identified State’s Exhibit 20 as a piece of aluminum foil containing small tablets given to him by Officer Saxon while executing the search warrant and this exhibit was received in evidence over appellant’s objections. Sullivan said that appellant told him the tablets were saccharin that he used in his coffee. Sullivan said that men’s clothes were found in two drawers in the apartment and that appellant’s shoes were under the bed and he was barefooted when he was arrested.
On cross-examination Sullivan stated that at the time of the search he knew that Mary Prichard had been indicted by a federal grand jury for the sale of heroin and that she lived at Gateway, a drug rehabilitation center. Sullivan did not know who owned or leased the apartment at 160 Lafayette Street but he had information that appellant had been living there for two weeks prior to the search.
Sullivan further testified that on the day of the search and arrest Mary Prichard was wearing one of appellant’s shirts and a pair of blue jeans, in fact the shirt was the same one that appellant had worn to court on the previous day. Sullivan qualified his previous statement that no women’s clothes were found by stating that he meant “no dresses, no bras, or undergarments that a woman would wear. Just pants and shirts.”
On redirect examination Sullivan stated that Mary Prichard had on a pair of men’s pants on the day of the search and that the items of clothes found in the apartment consisted of two pairs of blue jeans, one pair of brown corduroy pants, a green and white long-sleeved shirt, a brown suede buckskin jacket and one pair of boots which appellant put on before being carried to jail. No underwear was found in the apartment.
Officer Walter Pickett accompanied Officer Sullivan to the apartment to execute the search warrant. He saw appellant coming out the door and heard him say that he had kidnapped Mary Prichard and at the time he made that statement no officer present had asked him any questions. Pickett went to the bedroom where he found a brown paper bag in the bottom drawer of a dresser and the appellant made the statement “that the stuff belongs to him and that he lived there and that everything was his and not the girl’s.” Pickett further testified that appellant repeated this statement after being advised of his rights.
Patrolman John Saxon testified that as a result of a telephone call from Officer Sullivan on the morning of April 7, 1975, he stationed himself in a position where he could observe the apartment at 160 North Lafayette Street through a pair of binoculars. Prom this position Saxon observed appellant and a white female leave the apartment and reenter on two occasions from approximately 11:30 to 11:35 a. m. According to Saxon he had seen appellant at the apartment about two weeks earlier.
Saxon participated in the search of the apartment and found 30 small white tablets wrapped in aluminum foil in the kitchen. He found no dishes, glasses, eating utensils or food in the apartment. Appellant stated the tablets were saccharin.
On cross-examination Saxon testified that appellant and Mary Prichard appeared to be having an argument while he observed them outside the apartment. Saxon stated that he recognized appellant because he had been pointed out to him as a “known narcotic dealer,” and that he had observed him during the daytime at the apartment several times during the two-week period preceding the search and arrest.
Alilee Pillman had been employed by the State Department of Toxicology since 1951. She testified that she had a degree in general chemistry, analytical chemistry and instrumental analysis and had performed thousands of analyses on controlled substances and had testified in court a hundred or more times. She conducted a laboratory analysis on all the drugs that were delivered to her as having been found in the search of appellant’s apartment and they *1222 were all controlled substances. There were approximately 800 pills, tablets and capsules on which she conducted a laboratory analysis. She stated the 30 small white tablets in the aluminum foil were not saccharin tablets but were codeine tablets. She testified that she ran tests on State’s Exhibits 17, 18, and 19, which were two syringes, a needle and a cap, and that these tests disclosed that only one of the items contained a controlled substance, pentobar-bital sodium, a derivative of barbituric acid.
On cross-examination this witness stated that Exhibit 3 (containing dihydrocodeinone vitrate) and Exhibit 13 (containing diaza-pen) were substances not listed in the indictment.
George Sullivan was recalled to the stand and testified that he saw another officer pick up State’s Exhibits 17, 18, and 19, that they were handed to him and he delivered them to Nelson Grubbs, Assistant State Toxicologist of the Mobile Division of the Department of Toxicology. These exhibits were introduced into evidence over appellant’s objection that they were not listed on the return to the search warrant in violation of Title 15, Section 112, Code of Alabama 1940, and that the search violated the constitutional and statutory rights of appellant. At this point the State rested its case.
Appellant called his mother, Mrs. Rosetta Luker, to testify in his defense. She testified that appellant had been living with her at her home in Theodore for about two weeks before he was arrested and that he had slept there every night. Mrs. Luker stated that prior to that time he had been living with Mary Prichard on Lafayette Street, but that they had broken up. She said he received his mail at her home and some of his clothes had been left by mistake at the Lafayette Street apartment. She said that appellant arrived at her home around 9:30 the night before he was arrested.
At the close of Mrs. Luker’s testimony appellant moved to exclude the State’s Exhibits 3 and 13 on the ground that they were controlled substances and were not included in the indictment. This motion was denied.
Defense counsel then informed the Court that during a recess some police officer informed him that some five or six years previously, while he was an Assistant District Attorney for Mobile County, he had prosecuted and convicted appellant’s brother on a burglary charge. He told the Court that he did not know this until within the last five minutes. That he had informed the defendant and was now informing the Court.
From the record:
“THE COURT: Do you feel, yourself, that would be a conflict as far as your representing this defendant to the very best of your ability?
“A. No, sir, I don’t. I don’t remember his brother, to be very frank about this.
“THE COURT: You don’t remember this particular case?
“A. No, sir. He was one of hundreds—
“Q. As Assistant District Attorney, you prosecuted a number of cases, did you not?
“A. Yes, sir, I did.
“THE COURT: And you are stating to the Court that you don’t even remember this particular case. Do you remember the brother of this defendant?
“A. I don’t remember him whatsoever or any part of the case.
“THE COURT: Now that you have been advised and apprised of the fact that you had prosecuted his brother four or five years ago when you were an Assistant District Attorney, would that in any manner at this time in your opinion interfere with your continuing with representing this defendant to the best of your ability and based on all the experience you have had in representing him as he should be represented?
“A. No, I do not but I thought I should bring it to the Court’s attention.
“THE COURT: All right. Now, let me address myself to the defendant. Based on what has just been stated to the Court *1223 by your attorney, Mr. Ralph Loveless, do you wish to continue with this trial?
“A. No, sir.
“THE COURT: On what grounds do you not?
“A. I don’t know, Man. It would be kind of weird having him defending me and he sent my brother to the penitentiary-
“THE COURT: Do you feel that he has not in any way represented you properly?
“A. No, sir.
“THE COURT: Did you hear him state to the Court that he feels that he could go ahead and continue and represent you and that he doesn’t remember the case against your brother?
“A. Sir?
“THE COURT: Do you understand what he has stated to the Court that he feels that he could continue representing you as he has before this time and continue on with the case representing you. Do you believe he could do that?
“A. I don’t know.
“THE COURT: Would you state to the Court why you wouldn’t know? Is there anything indicated to you that he has not properly represented you?
“A. No, sir.
“THE COURT: Do you feel like he has well represented you?
“A. Yes, sir, up to this point.
“THE COURT: Did you hear him state that he does not remember this prosecution against your brother four or five years ago?
“A. Yes, sir, I heard him say that.
“THE COURT: Do you believe that statement by him?
“A. Yes, sir.
“THE COURT: With that, then, the Court will continue with the case. Bring in the jury.”
Appellant testified that he was a former drug user. He met Mary Prichard in November of 1974 and lived with her at the Lafayette Street Apartment for one and a half weeks. That he moved out of the apartment about two weeks before he was arrested leaving behind two pairs of pants. He stated that he and Mary Prichard broke up because she had been using drugs and having sex with another man.
Appellant further testified that he received a telephone call from Mary Prichard on the morning of April 7, 1975, and he went over to the apartment to see her. He stated that the apartment was leased to Mary Prichard and that this was the only occasion since they broke up that he had visited the apartment.
Appellant’s own counsel elicited testimony from him that he had previously been convicted of grand larceny, burglary, forgery and drug offenses and had served time in the penitentiary. He testified that he last used drugs in March of 1973. He stated that he had no knowledge of the presence of drugs in the apartment before the police officers arrived and found them.
On cross-examination he admitted that he was presently on parole. Appellant explained the absence of kitchen utensils in the apartment by stating that he had taken them with him when he moved out. He stated that he claimed the drugs the officers found in the apartment in order to protect Mary Prichard. He admitted that he had used heroin in the past and that he had been to the rehabilitation center for the 21 day treatment program for drug addicts. He admitted he had sexual relations with Mary Prichard and that was his purpose in going to the apartment on April 7, 1975, when she telephoned him.
The general rule is, that it is sufficient to prove so much of an indictment as shows that the defendant has committed a substantive offense therein specified. Porter v. State, 58 Ala. 66; Blakeney v. State, 244 Ala. 262, 13 So.2d 430; Cook v. State, 56 Ala.App. 250, 320 So.2d 764; Van Nostrand v. State, 56 Ala.App. 141, 319 So.2d 760; Parks v. State, 46 Ala.App. 722, 248 So.2d 761.
Spontaneous statements made to officers by custodial questioning are generally admissible as voluntary. Truex v. State, *1224 282 Ala. 191, 210 So.2d 424; Barnes v. State, 45 Ala.App. 6, 221 So.2d 399.
The conflicting evidence made and presented a question for the jury’s determination and the issue was resolved against appellant. The truthfulness or falsity of conflicting evidence is not within the province of this Court to pass judgment. Fagan v. State, 35 Ala.App. 13, 44 So.2d 634; Snipes v. State, 50 Ala.App. 139, 277 So.2d 413.
Appellant contends that the imposition of a 30 year sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States. The sentence prescribed and imposed was authorized by the law under which appellant was prosecuted. The evidence disclosed that he was a multiple drug convicted felon. This was his third narcotic conviction and the sentence was authorized by Title 22, Section 258(53) Code of Alabama 1940. The Alabama Uniform Controlled Substances Act was held to be constitutional in Boswell v. State, 290 Ala. 349, 276 So.2d 592.
Finally, appellant contends that after it was revealed that his attorney, while serving as an Assistant District Attorney, prosecuted and convicted appellant’s brother for the offense of burglary, that the Court should have permitted appellant to represent himself. He relies on the case of Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. In Faretta there was a request for pro se representation and in the instant case there was no such request.
We have set out in full just what occurred when this matter was brought to the attention of the Court and we find no reversible error in the trial court’s ruling.
There was no motion to exclude the State’s evidence; there was no motion for a new trial; there was no request for the affirmative charge, and there were no exceptions reserved to the oral charge which contained any merit. In this state of the record very little is presented to this Court for review. We have written to all of the issues presented on this appeal. Eady v. State, 48 Ala.App. 726, 267 So.2d 516; Jones v. State, 55 Ala.App. 466, 316 So.2d 713; Bass v. State, 55 Ala.App. 88, 313 So.2d 208; Hurst v. State, 54 Ala.App. 254, 307 So.2d 62.
We have carefully examined the record and find no reversible error.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur except CATES, P. J., not sitting.