LEIGH M. CLARK, Retired Circuit Judge.
Appellant was indicted with Bryant Dixon for an alleged robbery and was tried separately and convicted. His punishment was fixed at ten years imprisonment, and he was sentenced accordingly. His only insistence on a reversal is as to the sufficiency of the evidence to justify (1) the denial of defendant’s motion to exclude the evidence at the conclusion of the State’s *701 case and (2) the overruling of defendant’s motion for a new trial.
At the time the State rested its case, the evidence consisted chiefly of the testimony of the alleged victim, Glen Maddox. According to his testimony, he was a painter by occupation and lived in Blakely, Georgia; on the night of October 29, 1977, about 11:00 o’clock, he want to the “Speak Easy Lounge,” in Houston County, and drank a beer, paying for it out of money that he had in his billfold. The owner of the lounge and his son, defendant Roger Graves, were there at the time. Maddox stayed in the lounge about forty-five minutes and then went out and “sat down in my [his] truck.” Bryant Dixon joined him there and sat in the truck with Maddox. At about 12:00 o’clock that night, Roger Graves came toward the truck, “Opened the door and beat me [Maddox] up.” Roger Graves hit him, Bryant Dixon “went to beating me [Maddox] on the other side,” and they beat him until he didn’t know anything. His billfold was with him at the time of the beating; he had counted his money and he had at that time two thousand two hundred and seventy-three dollars. He had his glasses on before he was beat up, but they were not on after he “came to.” He checked for his billfold and it was missing. Maddox testified also that he became unconscious again and did not regain his consciousness until he was at the hospital, after being taken there by a patrol car, except for a slight return of his consciousness at a wreck, which the officer driving the patrol car went to on their way to the hospital. The following is the concluding part of his testimony:
“Q Do you recall if Defendant Graves hit you more than one time?
“A I can’t say, because I don’t know. When they both went to hitting on me, they knocked me out, unconscious.
“Q Can you recall anything after Bryant Dixon hit you the first time?
“A No.
“Q How long an interval or how much time elapsed between the time Graves hit you and when Dixon hit you?
“A They both went to beating me about the same time.”
Deputy Patrolman Curtis Howell, of Houston County Sheriff’s office, testified that in answering a call informing that there had been a robbery at the Speak Easy Lounge, he found Bryant Dixon in an International Pickup truck at the Speak Easy Lounge. He noticed a “lot of change” on the driver’s side of the truck. He said that it “Looked like there had been a scuffle and a pair of broken glasses.” He arrived at the scene about one o’clock. Bryant Dixon was intoxicated but “he seemed to be, talking like he knew what he was talking about.” He searched Mr. Dixon and found about six dollars in change on him.
State Trooper Lawler testified that after midnight on the night of October 29-30, 1977, he was in the act of passing the Speak Easy Lounge on the way to a wreck and that a man, whom he identified as Maddox, was standing in the road trying to flag a car down. Maddox appeared to be drinking, so he put him in the back of the patrol car. Maddox’s face had been cut and there were bruises on him. His jaw was swollen “just a little bit.” He took Mr. Maddox on to the wreck. Maddox was in “a dazed condition.” An ambulance took Maddox to the hospital.
Whatever the state of intoxication of Mr. Maddox at the time of the alleged robbery and thereafter, it was sufficient, we think, to weaken the reliability of his testimony, but it was not sufficient to obliterate it. It constituted substantial evidence that appellant and Dixon beat him severely, that before the beating he had a large sum of money on his person in a billfold, and that immediately after the beating his billfold was missing. His testimony constituted direct evidence that appellant committed “violence to his person,” charged alternatively in the indictment as one of the elements of the crime of robbery; his testimony constitutes strong, though not conclusive, circumstantial evidence that appellant took part in feloniously taking “from his [Maddox’s] person, and against his will” a large sum of money. There was direct or circumstantial evidence of all of the materi *702 al averments of the indictment charging robbery. The trial court was not in error in denying defendant’s motion to exclude the evidence.
Appellant’s father testified that Maddox had been in the Speak Easy Lounge around 10:00 A.M. on the morning of October 29, 1977, and had three beers on that occasion. He said Maddox had been in the Speak Easy Lounge some twenty to thirty times prior to October 29, 1977. He said that on the night of October 29, Maddox was talking in a loud and boisterous manner, bought a beer for himself and Dixon, and attempted to get someone to play him a pool game on a bet of a hundred dollars, that Maddox was flashing a one hundred dollar bill. He said Maddox left' the lounge about 11:30, about the same time appellant left it, but that appellant and his girl friend had left before Maddox left. The witness said that as he closed the club, he went outside and saw both Maddox and Dixon slumped over in the truck. He said he returned to the lounge about 1:00 A.M. and no one was there. He said his son, appellant, “worked there to keep down trouble.”
Bobby Hayes and Mike Driver testified to the effect that Maddox had drunk excessively the night of the alleged robbery and that his conduct was that of an intoxicated person.
Karen Roberts testified that she lived at Mobile and had known appellant approximately one year. She said she was with him the night of the alleged robbery, that she first saw him at the Speak Easy Lounge around 11:00 P.M., that appellant’s girl friend, Frances Cox, was also there. She also saw Maddox, whom she did not then know. She said he was drinking at the time. Just a little after 11:00 o’clock she and Frances left. Frances drove the automobile, dropped Karen off at the Red Coach Lounge, and returned in about ten or fifteen minutes with appellant. Karen went to the car and “just a little after eleven” the three left the Red Coach, went to the Jiffy Mart in Ashford and bought some soft drinks. The three rode around for a while and parked on a dirt road. They returned to the Red Coach Lounge “about two or two thirty” in the morning. In other words, according to her testimony, she was with appellant and Frances continuously from about 11:15 or 11:30 until about 2:30 A.M. the same night. On cross-examination, she said that at the time of her testimony she was living with appellant in Mobile.
Frances Cox testified substantially in accord with the testimony of Karen Roberts. There was a slight difference in their testimony as to the time that they first saw appellant that night at the Speak Easy Lounge, which will be referred to hereinafter.
Appellant testified that at the time of the alleged robbery he was working in Houston County, where he lived with his parents. At the time of the trial, in March of 1978, appellant lived in Mobile. He said he was twenty-two years of age, that he had known Glen Maddox about four or five years. He and all other witnesses that said anything about the possible age of Mr. Maddox, referred to him as an old man. The witness said that he left the Speak Easy Lounge, “Somewhere around eleven or maybe eleven fifteen” the night of the alleged robbery. He said Maddox and Dixon had come in together about nine thirty or ten o’clock. He had known Dixon seven or eight years. He said Maddox was flashing money around, and that Maddox was still there about the time appellant left, but appellant did not see him exactly at the time appellant left. He said he then went to the Red Coach Lounge, met Frances, as Frances was apparently coming back from the Red Coach Lounge, and he told her that he would meet “them down at the Red Coach.” His testimony was substantially in accord with that of Frances and Karen as to what happened thereafter, except that, according to him, they last went to the Red Coach Lounge around 3:00.
In insisting that the trial court was in error in overruling defendant’s motion for a new trial, appellant directs attention to a ground thereof that asserts that the verdict of the jury was against the great weight of the evidence. Our duty as to the *703 point is to reverse the action of the trial court if, but only if, we are convinced that the verdict is wrong and unjust. Taylor v. State, 30 Ala.App. 316, 5 So.2d 117 (1942); Coffey v. State, 31 Ala.App. 120, 12 So.2d 863 (1943); Barker v. State, 55 Ala.App. 332, 315 So.2d 129 (1975) cert. denied, 294 Ala. 752, 315 So.2d 130; Smith v. State, Ala.Cr.App., 342 So.2d 422 (1977).
In insisting upon a reversal on the weight of the evidence ground, appellant stresses the evidence, including testimony of defendant, to the effect that he was elsewhere at the time of the alleged crime. Alibi evidence, like all other evidence, has varying degrees of strength, and regardless of the number of witnesses testifying to an alibi, it is rarely conclusive. In weighing alibi evidence generally, many factors are to be taken into consideration, including the usual factors to be taken into consideration in connection with evidence in general, such as natural interest the witness would have as a party and the interest that a witness may have by reason of his or her relationship to a party. That one is a friend of the defendant does not necessarily discount his testimony as to an alibi, but his friendship is to be considered. Both of the witnesses who testified for defendant as to his alibi were his close friends. In addition, we note that there was not complete accord among the witnesses as to the time involved or positiveness as to crucial questions of time. One of the girl friends said that they went to the Speak Easy Lounge at about 11:00; she said, “I guess it was about 11:00.” She said they left there “a little after eleven and went down to the Red Coach.” The other girl friend testified that the two of them went to the Speak Easy Lounge “between ten and ten-thirty, I believe.” When asked how long they stayed at the Speak Easy Lounge before they went to the Red Coach Lounge, she said “It couldn’t have been more than an hour.”
It is to be seen that if one of the witnesses was correct in her statement that they, arrived at the Speak Easy Lounge about 11:00 and the other was correct in her statement to the effect that they may have been there about an hour before going to the Red Coach Lounge (where defendant accompanied them both after one of them had returned to the Speak Easy Lounge to accompany him to the Red Coach Lounge, where the three of them again met), a reasonable conclusion is permissible that they were not with him at 12:00, the time Maddox testified he was beaten and robbed. There is no disagreement as to the time of the crime was committed, if any crime was committed.
The witnesses as to an alibi could as well have been mistaken as to the exact time when defendant was with them after they left the Speak Easy Lounge as Maddox could have been as to his identification of defendant. In so stating, we draw upon what was said by Justice Foster in Davis v. State, 229 Ala. 674, 675, 159 So. 209, 210 (1935), as follows:
“. . . There was substantial evidence of an alibi. But the witnesses so testifying might as well have been mistaken as to the exact day when defendant and his companions were in Birmingham as the State’s witnesses in their identification of them.”
Appellant impliedly asks that we give particular consideration to Hardis v. State, 28 Ala.App. 524, 189 So. 216 (1939). We gladly do so. In Hardis, the court on appeal reversed for the failure of the trial court to grant defendant a new trial. The court on appeal was greatly impressed with the intoxicated condition of the alleged victim of a robbery at the time of the robbery, who, like the victim here, was the only actual witness who testified as to the robbery. The opinion in Hardis does not purport to give a narrative of the testimony of the witnesses. We cannot tell from the opinion whether the guilt or innocence of appellant turned to any extent upon the identification of the appellant in that case as to the criminal, or one of the alleged criminals. It can be readily understood that the circumstances of the particular case of an alleged robbery can become so complicated that the testimony of an intoxicated person would be especially untrustworthy, as to such com *704 plicated circumstances, much more so than the testimony of an intoxicated person as to the single, simple, crucial question of the identity of the person who had beaten him so severely that he had to call for help and to the hospital. Especially is this true when, as here, the person so identified was well known and well observed at the time by the victim of the robbery.
We have no reason to believe that the jury was influenced in finding the defendant guilty by anything other than the evidence. We are not convinced that the verdict was wrong or unjust. The trial court was not in error in overruling defendant’s motion for a new trial.
Our review of the record has revealed no error prejudicial to defendant. The judgment appealed from should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.