TYSON, Judge.
Lawrence Bonman, Jr., was indicted in January, 1978, for the offense of robbery. Trial was had on a plea of not guilty on March 9, 1978, and on this day the jury found appellant guilty as charged and fixed *832 his punishment at twenty years imprisonment. Appellant’s motion for new trial was denied on May 15, 1978, and this appeal followed.
At approximately 7:00 o’clock on the evening of December 6, 1977, Max Nichols was attacked, beaten and robbed outside his gas station-grocery store by appellant and two others. Mr. Nichols' had known appellant for two years and recognized him during this robbery. After beating the victim with a shovel, the appellant and the two other perpetrators made off with the victim’s money box which contained several thousand dollars in cash.
In response to the victim’s call, the sheriff, Richard Vamon, arrived soon thereafter and searched the area. The sheriff found the money box and three toboggans.
The following day a car, in which the appellant and two males were riding, was stopped for a traffic offense by Sheriff Varnon. The sheriff stated that he questioned them about their whereabouts the preceding night, and they offered to go to Mr. Nichols’ store and let him see them. At the store, Mr. Nichols asked appellant why he had done it, and appellant denied committing the robbery.
Three days later, on December 10, 1977, Mr. Nichols signed an arrest warrant for appellant. Appellant was arrested the same day and informed of his constitutional rights. He refused to make a statement.
Deputy Charles Tate of the Lamar County Sheriff’s Department testified at trial that, while he was taking appellant’s fingerprints and after he had informed him of his Miranda rights, the appellant admitted that the toboggans found at the scene of the robbery were his, without any questioning by Deputy Tate.
A preliminary hearing was held on January 4, 1978, and the appellant was bound over to the grand jury.
At trial appellant testified himself and presented witnesses who testified that he was elsewhere at the time of the robbery.
I
Prior to trial, the appellant moved to suppress the evidence of the prosecution’s chief witness, the victim of the robbery, Max Nichols, and to suppress any statements made by appellant to law enforcement officers.
Appellant first claimed that he was denied counsel at a preliminary hearing at which the victim testified, and, therefore, the victim should not be allowed to testify at trial. In support of this contention, appellant called Judge William Winston, District Judge of Lamar County, who presided at appellant’s preliminary hearing. Judge Winston testified as follows (R. pp. 7-9):
“Q. Judge, at the preliminary hearing on January 4th, did you advise the defendant he had a right to have an attorney present to represent him?
“A. Yes, I did.
“Q. Would you state to the court what, if anything, was his response?
“A. Well, I did advise the defendant he had a right to have an attorney and I also advised him that if he could not afford an attorney the court would appoint one. I also indicated to him that if he wanted to hire an attorney of his choice that the court would give him time that day to call or consult with an attorney. He indicated at that time that he did not want an appointed attorney, he wanted to hire a private attorney but he had not hired one yet. He was adamant in the fact that he wanted his own attorney but he had not made a choice or reached an agreement to hire one or have one represent him.
“Q. Did he indicate to the court at that time he could not afford an attorney?
“A. No, he didn’t.
“Q. Was anyone with him assisting him before the court?
“A. No. I believe his mother was present.
“Q. Did she indicate any participation in any decision or in that decision to you, Your Honor?
“A. She did. She stated she was beginning to make arrangements and perhaps *833 she indicated that she had talked to an attorney, but seemed to indicate they had not hired one at that time and would wait until a later time to hire an attorney.
“Q. Did you, or anyone in your presence, at that preliminary hearing, try to influence the defendant not to have an attorney to represent him at that preliminary hearing?
“A. No.
“Q. Was the choice whether to have an attorney not a voluntary choice on his part?
“A. I explained to him the preliminary hearing was an important part of the judicial process. I believe I re-emphasized that, the fact that if he did not have any money to hire one the court would be happy to appoint one, but he insisted that he did not want an appointed attorney.
“Q. Was the defendant given an opportunity to testify at the preliminary hearing?
“A. I explained to him that he did not have to take the stand if he didn’t want to. That is a right I try to advise all defendants of.
“Q. When he appeared in your court on January 4, 1978, did he appear to be under the influence of intoxicating beverages or drugs or other substances that might affect his mental condition?
“A. To the best of my knowledge, no.”
The testimony of Judge Winston clearly shows that appellant was made aware of the disadvantages of not having counsel present at the preliminary hearing and that appointed counsel would be afforded him if he so desired. Since he voluntarily, understandingly and intelligently waived his right to have counsel present, he cannot now claim to have been deprived of that right. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Clark v. City of Mobile, Ala.Cr.App., 357 So.2d 675, cert. denied, 357 So.2d 680 (1978); Cf. Mayola v. State, Ala.Cr.App., 337 So.2d 105, cert. denied, 337 So.2d 107 (1976).
The record also clearly shows that appellant was informed of his Miranda rights at the time of arrest and that the inculpatory statement uttered later that day was made spontaneously and not in response to custodial interrogation.
In Gibson v. State, Ala.Cr.App., 347 So.2d 576 (1977), Judge Bowen observed that:
“ . . . Once the mandate of Miranda has been complied with at the threshold of the questioning it is not necessary to repeat the warnings at the beginning of each successive interview. Here, the length of time and the events which occurred between the interrogations do not dictate that the warnings should have been repeated. Jones v. State, 47 Ala. App. 568, 258 So.2d 910 (1972); McBee v. State, 50 Ala.App. 622, 282 So.2d 62 (1973); Allen v. State, 53 Ala.App. 66,297 So.2d 391 (1974). ...”
Love v. State. Ala.Cr.App., 372 So.2d 414 (1979); Johnson v. State, 56 Ala.App. 583, 324 So.2d 298, cert. denied, 295 Ala. 407, 324 So.2d 305 (1975).
In Barnes v. State, 45 Ala.App. 6, 221 So.2d 399, cert. denied, 284 Ala. 727, 221 So.2d 404 (1969), testimony of a deputy sheriff regarding certain inculpatory statements of the appellant which were not made in response to custodial interrogation was held to be admissible. See also Harris v. State, Ala.Cr.App., 343 So.2d 567 (1977); Alabama Digest, Criminal Law, &wkey;412.1(2).
Thus, the trial court was correct in denying appellant’s motions to suppress.
II
The remaining issue on this appeal is whether there was sufficient evidence presented at trial to establish the offense of robbery. The testimony of the victim alone clearly established the offense. Graves v. State, Ala.Cr.App., 364 So.2d 700 (1978); Arnold v. State, Ala.Cr.App., 348 So.2d 1092, cert. denied, Ala., 348 So.2d 1097 (1977). Thus, a jury question was presented.
The record discloses no error. This case is due to be and is hereby
AFFIRMED.
All the Judges concur.