[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 219 
First degree murder; sentence: life imprisonment.
On the evening of October 20, 1979, Clarence Rymes, Jr., was shot to death in the home of Janice Robinson. Alberta Henderson and Rymes were visiting Janice Robinson, and all three were seated on a sofa when several shots were fired through a window behind them. Rymes was hit by four bullets causing his death. A few days later Janice Robinson saw the appellant at a local grocery store at which time he showed her a gun and said, "If you say anything to anybody about what happened, I am going to kill you and your daughter." She contacted the police immediately thereafter. She had had prior difficulties with the appellant which will be discussed hereinafter in more detail.
The appellant raises three major contentions on appeal.
 I
On October 25, 1979, Sergeant W.T. Gaut, a City of Birmingham homicide detective, and two other officers went to Stockham Valve and Fitting Company in Birmingham, the appellant's place of employment, to execute a warrant to search the appellant's automobile. They stopped at the company guard's office at the plant entrance and spoke with the company's chief of security, James Nelson. The officers were informed that company rules required all employees to check any firearms with the guards before entering the premises. The company also did not allow police officers to go into the plant to locate and question employees. Therefore, Nelson sent for the appellant and had him brought to the administrative building and allowed the three police officers to talk to him in private in one of the offices. Nelson did not participate in the conference and did not overhear their conversation.
At the end of the discussion between the officers and appellant, they came out of the office, and Sergeant Gaut told Nelson that "they were going to take him [appellant] in and do some checking, and if things worked out all right he would be back to work. If not, he would not." Nelson saw the officers leaving with the appellant, but said he did not go to the gate with them. He saw them stop at the guard office, but could not observe what took place there.
Sergeant Gaut testified that when he first confronted appellant in the company office he identified himself as a homicide officer, showed appellant his badge, and asked if his name was Jerome Terry. After appellant affirmed his name, Sergeant Gaut asked if appellant "still owned a .38 caliber pistol, R.G. type," and appellant replied that he did. Gaut then showed him the search warrant and informed him it was a warrant to search his vehicle. Appellant responded by saying, "Well, my gun is not in the car, it is out at the Guard Station." Appellant was not technically under arrest at the time he acknowledged ownership of the pistol and told the officers the location of the gun. Those two statements, however, were suppressed by the trial judge in a pretrial suppression hearing because appellant had not been apprised of his Miranda rights at that time.
Sergeant Gaut testified that on leaving the plant, as the group got even with the window to the guard station, James Nelson opened a drawer exposing several pistols and asked appellant, "which one of these is yours?" Gaut said the appellant pointed out a pistol to Nelson, who then handed it to appellant. Gaut then took the pistol from appellant's hand, examined it, and then placed him under arrest and read theMiranda rights to him.
Appellant contends (a) that his reply to the company guard (whether Nelson or another company guard) prior to receipt of the Miranda warning should have been suppressed, and (b) the seizure of the pistol under the above circumstances violated his *Page 220 
Fourth Amendment rights and the pistol should not have been introduced into evidence.
 A
We find no error on the part of the trial court in admitting into evidence the appellant's reply to the question asked by the company security guard.
 "Miranda is limited to custodial interrogations only. Custodial interrogation is defined as `questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' Miranda, [384 U.S. 436] 86 S.Ct. at 1612 [16 L.Ed.2d 694]. This is what is meant in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), by reference to an investigation which had `focused' on the accused. Miranda
[384 U.S. 436] 86 S.Ct. at 1612, fn. 4.
 "The Miranda warnings are not required simply because the questioned person is one whom the police suspect or one on whom the investigation has focused. . . ." Harris v. State, Ala.Cr.App., 376 So.2d 773, cert. denied, Ala., 376 So.2d 778 (1979).
Miranda has no application where an inculpatory statement, otherwise admissible, is made to persons who are not officers of the law or their agents. Truex v. State, 282 Ala. 191,210 So.2d 424 (1968); Ellis v. State, Ala.Cr.App., 338 So.2d 428
(1976); Bedingfield v. State, 47 Ala. App. 677, 260 So.2d 408
(1972).
In the instant case the appellant was clearly in custody when the officers apprised him that they were "taking him in" and began escorting him off the company property. He was therefore in custody when he obtained his pistol at the gate and when the officers saw and overheard him identify which pistol was his. However, the remaining question is whether or not the Stockham guard was acting as an agent for the police in opening the drawer containing the guns and asking appellant, "which one of these is yours?"
There is no evidence in the record to support the contention that the plant guard was acting as an agent for the police at that time. Appellant, pursuant to company rules, had relinquished possession and control of the pistol to the company guards on entering the premises. He was then leaving the premises, and the guard was returning his pistol to him. The question was addressed to the appellant, and the gun was handed directly to him by the guard. There is no evidence that the guard was acting under the control of or at the request of the police in returning the pistol. In fact, Sergeant Gaut was not certain which guard returned the pistol. He testified that it was James Nelson; however, Nelson said he did not go to the gate with them at that time.
 B
We find the seizure of the pistol from the appellant's hand to be lawful.
The officers were armed with a warrant to search appellant's car. Appellant's brief infers that the officers should have searched the car in the Stockham parking lot without first speaking with the appellant. We find nothing wrong with seeking out the appellant to ascertain his identity and to notify him of the search warrant. Section 15-5-9, Code of Ala. 1975, authorizes an officer in executing a search warrant to break and enter a dwelling only after giving notice of his authority and purpose and being refused admittance. Although that section applies to houses, nothing in the law requires officers to break into an automobile without first notifying the owner of the search warrant. The officers were well within their rights to identify the owner and show him the search warrant before breaking into his car.
The officer's question to appellant, "do you still have a .38 caliber pistol," and appellant's answer were excluded from evidence. The officers then apprised appellant of the warrant to search his car, and he replied that "the gun is not in the car, it is *Page 221 
at the Guard Station." Whether that statement caused the officers to stop at the guard station on their way out is left to conjecture. The testimony at the suppression hearing would support a finding that the stop there and return of the gun were spontaneous actions occasioned by the unsolicited conduct of the company guard. In any event, we do not believe the appellant's statement that the gun was not in the car but at the guard station was inadmissible even though the trial court excluded it.
It is doubtful that appellant was in custody at that point. He was properly presented with a warrant to search his car, and his statement was unsolicited and not in response to any interrogation at that point. He volunteered the information as to the whereabouts of the gun. The officers certainly did not ask him where it was. Spontaneous or volunteered statements fall outside the mandate of Miranda. Luker v. State, Ala.Cr.App., 344 So.2d 1219 (1976), cert. quashed, Ala.,344 So.2d 1224 (1977). Likewise, statements not made in answer to questioning are outside the scope of Miranda. Barnes v. State,45 Ala. App. 6, 221 So.2d 399 (1969).
When the appellant identified his pistol and the guard handed it to him, the police officer could lawfully seize and examine it without first obtaining another warrant to search the guard station or the appellant. The officers had come to the company armed with a warrant to search the appellant's car for a ".38 caliber revolver `R.G.' Model # 31, Serial # Q118251," specifically set out in the warrant. When presented with the warrant, appellant informed the officers that the pistol in question was at the guard station. When the guard handed the pistol to the appellant, it was in plain view which is an exception to the warrant requirement. Daniels v. State,290 Ala. 316, 276 So.2d 441 (1973).
Additionally, when the appellant voluntarily relinquished possession and control over the pistol by leaving it at the guard station while on the premises, he relinquished any expectation of privacy he may have had in possessing the gun. "What a person knowingly exposes to the public, even in his own home or office, is not subject of Fourth Amendment protection."Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511,19 L.Ed.2d 576 (1967); United States v. Santana, 427 U.S. 38,96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). See also Rakas v. Illinois,439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The trial court therefore committed no reversible error in the instant case in admitting the pistol into evidence.
 II
Appellant contends he was denied a fair trial by (a) the trial court's failure to declare a mistrial after a prosecution witness, Janice Robinson, had a seizure while testifying, and (b) by the court's solicitous conduct toward the witness following the seizure.
 A
The record reveals that after a few minutes of questioning Janice Robinson on direct examination the prosecutor asked for a recess and the trial judge granted it and sent the jury out. The following then occurred:
 "MR. HIGGINS: Your Honor, for the record, I would like to move for a mistrial at this time. I believe in light of the facts that have been brought home in opening statements, and so forth, about all of the interaction that supposedly took place between the defendant and this witness, that the unfortunate incident here is so prejudicial that he would not be able to get a fair trial before this jury.
 "THE COURT: All right. Overruled. I have talked to the doctor and the doctor says she is able to go on this afternoon. That she could have another one of these, but it is not harmful to her. And we would just have to stop the trial again if she has another one. The nurse is going to go downstairs and tell them where she is going to be and she is going to come back upstairs and stay in the Courtroom over on the side in case she needs any help. *Page 222 
 "MR. COLEE: Judge, would the Court consider putting off testimony until in the morning?
 "THE COURT: I will. I would like to try one more time. I think it would be all the harder for her, so we will try one more time.
 "MR. COLEE: I feel the effect would be so damaging, either if she does it again, or if she is unable to testify at all.
 "THE COURT: If she is unable to testify or if she has another one of these seizures, then we'll stop until tomorrow morning.
 "(Whereupon, the jurors were brought in and the following was had and done before Court and jury.)
 "THE COURT: Members of the jury, Mrs. Robinson feels better and we are going to try to go ahead. And if she doesn't feel better I told her we will have a recess at any time."
The examination of the witness then continued.
We are unable to ascertain from the record what happened to occasion the recess except that the trial judge mentioned that "if she has another one of these seizures, then we'll stop until tomorrow morning." It is apparent that the witness had some type seizure, but we do not know the severity, length, or other circumstances of the attack. The defense counsel did not state for the record what occurred. There is no showing that the occurrence affected the jury and no request that the jury be polled at the time. The trial judge was in a more advantageous position to observe what occurred than we are. He was able to observe what transpired and its effect upon the trial of the case and upon the jury.
A motion for a mistrial is a matter addressed to the sound discretion of the trial judge, and his ruling thereon will not be revised except where a clear abuse of discretion is shown.Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967). Here, the appellant has not shown any abuse of discretion on the part of the trial court. We must look to the record and the evidence presented therein and not to assertions contained in counsel's brief. Edwards v. State, 287 Ala. 588, 253 So.2d 513 (1971).
 B
During the course of Janice Robinson's testimony, after her seizure or illness, the trial judge on several occasions inquired if she was feeling well or told her to let him know if she needed a recess, etc. The witness was subjected to very lengthy examination and cross-examination by both sides. While the record reveals the trial judge was concerned with the health of the witness, we cannot say that the trial judge's conduct was so solicitous as to bolster the credibility of the witness and deny the appellant a fair trial. Defense counsel made no objections to the trial judge's actions regarding the witness during the course of the testimony, and the record fails to reflect any improper conduct on the part of the trial judge which was prejudicial to the appellant. Error is not presumed, but must be clearly shown by the appellant. Bryson v.State, 264 Ala. 111, 84 So.2d 785 (1955).
 III
Appellant contends the trial court erred in failing to exclude testimony of prior unrelated criminal acts on his part.
Janice Robinson testified that she had seen the appellant on three occasions prior to the shooting in question. The first time she was accosted on the street by appellant who wanted to buy her a drink. On the second occasion the appellant was attempting to break in and enter the bedroom window, and she and her child were forced to flee her home. On the next occasion appellant gained entrance to her home by coming through that same bedroom window. He grabbed her and began wrestling with her and fondling her body and private parts. Appellant told the witness that if he could not have her no one else would and that he was going to kill her. Her brother entered the front of the house, and the appellant fled through the window by which he had gained entry. *Page 223 
Approximately one week later Clarence Rymes was shot and killed by bullets fired into the same window as Rymes and Janice Robinson sat on a sofa which was located in front of the window. The State therefore sought to show the prior acts of the appellant to prove his identity, motive and intent, and to establish the crime of first degree murder via transferred intent to kill. That is, appellant was attempting to and intended to kill Janice Robinson, but instead killed Rymes. His intent to kill is therefore transferred to Rymes. Harris v.State, 46 Ala. App. 189, 239 So.2d 331 (1970).
The general rule in Alabama is that evidence of distinct and independent offenses is not admissible in the trial of a person accused of a crime; however, there are several well-recognized exceptions to the general rule. Evidence of prior distinct offenses is admissible to show "knowledge, intent, plan or design, motive, identity and inseparable crimes." Mason v.State, 259 Ala. 438, 441, 66 So.2d 557 (1953). Also see Brasherv. State, 249 Ala. 96, 30 So.2d 31 (1947), and Gamble,McElroy's Alabama Evidence (3d ed. 1977), § 69.01, et seq.
Here, the evidence of appellant's prior conduct of breaking into Janice Robinson's house, his violent acts toward her, and his threat were relevant and go toward identifying the appellant as the person who fired the pistol and likewise go toward showing his motive and intent in committing the crime charged. The trial court therefore committed no error in failing to exclude that testimony. We have reviewed the appellant's remaining contentions and find them to be without merit. We have likewise reviewed the record as required by law and find no error prejudicial to the appellant's rights.
AFFIRMED.
All the Judges concur.