282 So.2d 62

**Jerry Randolph McBEE**

**v.**

**STATE.**

**4 Div. 200.**

Court of Criminal Appeals of Alabama.

June 29, 1973.

Rehearing Denied July 12, 1973.

Clellon Baeder, Auburn, for appellant.

William J. Baxley, Atty. Gen., and Otis J. Goodwyn, Jr., Asst. Atty. Gen., for the State.

LEIGH M. CLARK, Supernumerary Circuit Judge.

Appellant was convicted of murder in the first degree of his ten-month-old son. He had entered a plea of not guilty to an indictment charging him and his wife, Frances I. McBee, with the crime. The jury that found him guilty fixed his punishment at life imprisonment. The trial court duly rendered judgment and sentence accordingly, from which this appeal is taken.

Frances McBee, wife of appellant, testified that on the morning of March 18, 1972, appellant left the house where they were living in Dothan, Alabama, and returned in about twenty or thirty minutes, around 9:30 A.M., while she was in the kitchen fixing breakfast; that appellant placed their ten-month-old baby on the kitchen table and attempted to feed it some bologna, which the child could not chew or swallow and was choking on it; that appellant then placed his left hand over the child's mouth and began whipping him over the legs and mid-section with his right hand and that appellant struck the child with both his open hand and fist. The witness testified that there after appellant took the child into the living room and placed him on the couch and returned to the kitchen and struck the witness four or five times, that some argument between them transpired and thereafter appellant returned to the living room. In the meantime she had heard a noise in the living room like the baby had fallen. Appellant returned to the kitchen, and after fussing and fighting with the witness, went back into the living room. The witness saw him set the child up on the couch, and it went limp. The witness went into the living room and observed that there wasn't any breathing or pulse beat. She testified that when appellant took the child in the living room it was just barely breathing. They both attempted to revive the child by "mouth-to-mouth resuscitation". She wanted to take the baby to the hospital, but appellant wouldn't let her. In about a couple of hours or more appellant asked her to get something to which to wrap the dead body of the baby. She obtained a housecoat and baby blanket and wrapped the body therein, and appellant put him in a cardboard box and placed it in a closet in the kitchen, where it remained two or three days, and it was then placed by appellant in the refrigerator where it remained until March 25. Upon determining that the child was dead, she observed bruises on his mid-section, his ribs and a large bruise on his head, none of which had been there before. She testified that on March 25 appellant asked her to get some coat hangers ready for him, and appellant got a cement block and sent her to the store for a hacksaw. Appellant cut two pieces of metal out of the back seat of the car, put a coat hanger around the body, waited until dark and then they put the body under the back seat. They went to Eufaula, went over the main bridge and pulled off on a side road. Appellant then took the body out, put it on the front floor board and attached the block to the coat hanger that was around the baby's neck. Thereafter they drove to the middle of the bridge going across the Chattahoochee River, stopped there and appellant threw the baby over the side. They returned to Dothan where they remained for approximately a month until inquiries from Mrs. Brooks of the Welfare Department prompted them to leave. She and appellant left Dothan and headed for Pensacola, Florida, but stopped in Crestview, Florida, and reported to the sheriff's office that the child had been kidnapped at a rest area on Interstate 10.

Detective James Deal of the Dothan Police Department testified that a search of the river at Eufaula was made, and that

the body of a child tied to a concrete block by a coat hanger around the child's neck was produced. Detective Deal's testimony was largely corroborated by the testimony of Mr. Lamar Miller, of the Enterprise Regional Crime Laboratory of the State Department of Toxicology and Criminal Investigation, who testified that he was in the vicinity of the search of the river, that Lieutenant Deal turned the body of a child over to him, that there was a portion of a concrete block attached to the head of the child by means of a piece of wire which had the appearance of a coat hanger. He testified it was a male child approximately one year old, that the body was badly decomposed.

No evidence was presented by the defense.

We now consider the only points made for reversal in the brief submitted by appellant's attorney.

■ It is argued in said brief that reversible error is to be found in the action of the trial court during the testimony of Mrs. Sara Brooks, a child welfare worker, as shown by the record as follows:

"Q. [By Attorney for the State] All right. Had you found out that the baby was not in Pensacola?

MR. HERRING: Now, I object to that. It would have to be hearsay. THE COURT: If she knows, I will permit her to answer. Do you know whether or not the baby was in Pensacola?

"A. The baby was not in Pensacola. This was checked out through the division—

MR. HERRING: Now, I object to that and move to exclude it.

THE COURT: Sustain the objection, and that's excluded, Ladies and Gentlemen of the jury. Do not consider that when you come to make up your verdict in this case."

The record does not sustain the contention of appellant. It is clear that the answer of the witness was promptly excluded and the jury instructed not to consider it. The action of the trial court fails to support a charge of reversible error. Wyatt v. State, 35 Ala.App. 147, 46 So.2d 837, cert. denied 254 Ala. 74, 46 So.2d 847; Reaves v. State, 33 Ala.App. 296, 33 So.2d 376, cert. denied 250 Ala. 81, 33 So.2d 378.

■ Appellant urges that reversible error was committed by the trial court in admitting in evidence a confession of defendant, made to Joe Clark, Sheriff of Okaloosa County, Florida, and others and relies upon Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Appellant does not contend that the full *Miranda* warning was never given, but that it should have been given a second time. It was fully given, and a statement made by defendant—appellant promptly after it was given was to the effect that the child had been kidnapped. After such statement there was a break of about forty-five minutes, and then, according to the testimony of Mr. Clark, defendant–appellant made a statement substantially in accordance with the testimony of his wife. No *Miranda* warning was made after the mentioned break of approximately forty-five minutes.

In Jones v. State, 47 Ala.App. 568, 258 So.2d 910, the same question was raised on facts as follows:

"After this warning [Miranda] was given the appellant replied that he had not done anything and would not need a lawyer. This interview revealed nothing incriminating and appellant denied any knowledge of or connection with the burglary. The following day appellant was again questioned by Edwards. On this occasion the appellant made several incriminating statements. He admitted going to the church with others but denied going into the church. The *Miranda* warning was not again given to appellant before this second interrogation."

We adhere to, repeat and apply here what was said in that case, as follows:

"[3] Appellant's second contention raises the question as to whether an accused must be given an adequate *Miranda* warning before each separate interrogation after a valid waiver of his right to counsel has been made. As a general proposition we think not, particularly under the facts here presented.

\*   \*   \*   \*   \*   \*

"[4] Whether the *Miranda* warning should be given before each interrogation must depend upon the circumstances of each case. The length of time and the events which occur between interrogations are relevant matters to consider.

"In support of our conclusion see In re Steven C., 9 Cal.App.3d 255, 88 Cal. Rptr. 97; People v. Hill, 39 Ill.2d 125, 233 N.E.2d 367; Miller v. United States, 396 F.2d 492 (8th Cir.); Tucker v. United States, 375 F.2d 363 (8th Cir.), cert. denied 389 U.S. 888, 88 S.Ct. 128, 19 L. Ed.2d 189.

"In People v. Hill, supra, the court stated:

'It should be made clear that once Miranda's mandate was complied with at the threshold of the questioning it was not necessary to repeat the warnings at the beginning of each successive interview. To adopt an automatic second-warning system would be to add a perfunctory ritual to police procedures rather than providing the meaningful set of procedural safeguards envisioned by *Miranda*.'

Some courts take this position even when the sessions are days apart. See Maguire v. United States, 396 F.2d 327 (9th Cir.), (Warning three days earlier held sufficient); State v. Magee, 52 N.J. 352, 245 A.2d 339 (Warning two and a half days earlier held sufficient)."

We rely upon Jones v. State, supra, as we did in Womack v. State, 49 Ala.App. 505, 273 So.2d 481.

Appellant next urges that the trial court committed error in permitting the jury to hear the evidence on the question of the admissibility of a confession of defendant to Mr. Jack Adkins, a Juvenile Officer of the Dothan City Police Department, that a "voir dire" examination requested by defendant's counsel should not have been conducted in the presence of the jury. The record does not show, and no contention is made, that defendant requested that the evidence on the question of the admissibility of the confession be offered or that the "voir dire" examination be conducted out of the presence of the jury. In the light of the opinion of the Supreme Court in State v. Wilbanks, 289 Ala. 166, 266 So. 2d 619, we are bound by what was said in Vincent v. Alabama, 284 Ala. 242, 224 So. 2d 601, as follows:

"While the better practice is for the trial court to initially hear evidence on the question of the voluntariness of a confession outside the presence of the jury, Duncan v. State, 278 Ala. 145, 176 So.2d 840, [23] [30], we find no reversible error in the instant case because here, as in Duncan v. State, supra, there was no request for a hearing outside the presence of the jury and there was no conflict in the evidence on the main trial. Duncan v. State, supra, [22]."

Our search of the record reveals no error prejudicial to appellant, and we conclude therefore that the judgment below should be affirmed.

The foregoing opnion was prepared by Honorable LEIGH M. CLARK, Supernumerary Circuit Judge, serving as Judge of this Court under Section 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the court.

The judgment below is hereby

Affirmed.

All Judges concur.