324 So.2d 298

**Theodore JOHNSON**

v.

**STATE.**

**6 Div. 884.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

Rehearing Denied Oct. 21, 1975.

Ralph C. Burroughs, Public Defender, Joel R. Chandler, Asst. Public Defender, Tuscaloosa, for appellant.

William J. Baxley, Atty. Gen., and Jack A. Blumenfeld, Asst. Atty. Gen., for the State, appellee.

BOOKOUT, Judge.

Murder in the Second Degree. Sentence: thirty (30) years.

Initially on appeal this case was remanded with directions because the record did not reflect that the trial court called to the appellant's attention the provisions of the Youthful Offender Act (Title 15, § 266(1)–(6), Code of Alabama 1940, Recompiled 1958).

On August 15, 1975, the trial court filed a supplemental transcript in answer to our order on remandment showing that a hearing was held on August 8, 1975, wherein the appellant Theodore Johnson stated that he and Mr. Chandler after talking with the Judge concerning the Youthful Offender Act, decided not to file under the Youthful Offender Act. This Court will now review the case on its merits.

Theodore Johnson, appellant, was arrested and charged with Rape and Murder in the first degree. Appellant was indicted by the grand jury of Tuscaloosa County. He was arraigned and after being found indigent, was appointed a public defender. Appellant entered a plea of not guilty, was tried for murder in the first degree, and found guilty of murder in the second degree. Appellant gave notice of appeal and requested and was granted a "working appeal."

On Saturday morning, June 22, 1974, Aletha Haygood, a thirteen year old black girl was found raped and murdered in her foster parents' apartment in the Woodmont housing project, in the Holt area of Tuscaloosa County. The appellant was questioned by investigators later in the afternoon. He was given the *Miranda* warning, arrested, charged, taken in custody, and placed in the Tuscaloosa County Jail that same afternoon. The following Tuesday or Wednesday, the appellant was questioned by Investigator Shirley Fields.

Robert Johnson, a toxicologist with the State Department of Toxicology, was called as the state's first witness. He testified that in his opinion, "this subject died as a result of strangulation, probably manual throttling of hands applied about the neck." He testified further that a sample of Aletha's blood was taken for analysis along with a pair of jockey shorts, a piece of cloth with embroidered lace, and a piece of cloth taken from the fly of a pair of green pants.

Rebecca Layton testified that she was the aunt of the deceased and that Aletha, the deceased, had been living with them for some nine and a half months. She testified that Aletha had asked if she could spend the night with a neighbor, Linda Bonner, since the Layton family would be away for the night.

Tommy Jones, a neighbor and friend of Aletha testified that on the Friday night of Aletha's death, Linda Bonner, Aletha, and

he were riding on his bike when they were met by Theodore Johnson, the appellant, somewhere around 10:00 p. m. Jones testified further that Theodore Johnson said, "You take Linda and I take Aletha." Theodore Johnson, the appellant, again said, "I'll take Aletha." At that time he pulled her from the bicycle and over to a car. They remained there for about five minutes and then the witness took Linda and Aletha home.

Linda Bonner testified that she was a friend and neighbor of Aletha Haygood. She testified as to the bicycle incident, stating that the appellant told Aletha to get off the bicycle and when she did not, he pulled her to the car. She also gave a description of what appellant was wearing. Aletha was able to jerk away and run down the street with Linda behind her. Linda testified that around 11:35 p. m. Aletha decided to go home, across the street. Linda stayed up until 12:30 a. m. and that at that time she saw the television set still on at Aletha's.

Jesse Johnson, mother of the appellant, testified as to a pair of trousers (State Exhibit 8) and a pair of undershorts (State Exhibit 5) as being worn by her son on the night of June 21. Mrs. Johnson stated that her son came home late. She testified further that she awoke around 5:00 o'clock the next morning and that she found the appellant asleep on the sofa in the den.

On June 22, Joyce Dawson, a friend of Aletha Haygood, found Aletha lying dead on the floor of the Layton apartment. On cross-examination she stated that she found the deceased at "something until nine" that morning. Death was established in later testimony to have occurred around midnight.

Adolph South, a detective with the Tuscaloosa County Homicide Unit, testified that he received the appellant's blood sample and sent it to Bill Landrum of the toxicology lab in Auburn. Mr. South further testified that he was off that Saturday when the body was found and that he went to the scene and assisted Investigator Shirley Fields.

Larry Wood, a patrolman with the Tuscaloosa Police Department, testified that he arrived at the scene around 9:15 a. m. Mr. Wood identified several pictures of the deceased Aletha Haygood. Appellant objected to these pictures on the ground that they were inflammatory, but the objection was overruled.

Mr. Shirley Fields, an investigator with the Tuscaloosa Police Department, investigated the homicide of Aletha Haygood. Fields identified numerous exhibits which were introduced into evidence. Fields first saw the appellant at 1:30 p. m. on June 22, 1974. He testified that he read appellant his rights from a card which met all *Miranda* requirements and then asked appellant if he still wanted to talk, to which appellant said yes. The appellant denied seeing Aletha the night before. After appellant gave a statement, Mr. Fields asked him if he could see the clothes he was wearing the night before. The appellant then went next door and brought back a green pair of pants, a black shirt, and some brown shoes. Mr. Fields examined the pants and stated that he found what appeared to be blood on the fly of the pants. Mr. Fields also observed what appeared to be stains (semen) on the appellant's jockey shorts. After denying having any sexual intercourse, the appellant later explained this by stating that he had had sexual intercourse with his girl friend the night in question. The appellant was then placed under arrest.

Mr. Fields testified that he talked to the appellant again at the homicide office on a Tuesday or Wednesday following the Saturday of the appellant's arrest. The appellant was not advised of his rights again but Mr. Fields asked him if he was still aware of his rights prior to talking to the appellant. The appellant stated that he was aware of his rights. The appellant

stated that he could not explain the blood stains on his pants and that he had been to a party that night with Frances May Jones until 3:00 a. m. on June 22, 1974. Detective Fields testified that he had blood samples taken of the appellant's girl friend and the appellant, which samples were sealed in an envelope and turned over to Detective South to be taken to the lab in Auburn.

On cross-examination Detective Fields testified that he took all the photographs of the deceased at the scene. Detective Fields also identified some defense exhibits which were introduced into evidence.

William Landrum, a criminologist for the State of Alabama, Department of Toxicology and Criminal Investigation, testified that he was primarily a serologist, explaining that serology entailed the study of antigens, antibodies, blood, and blood groupings. Mr. Landrum testified that he ran tests on the blood samples and on objects that had blood stains. He stated that the blood type or blood grouping of Aletha Haygood was group or type "B", that the same type or group was found on the blouse in evidence, as well as on rug fibers in the deceased's home. Mr. Landrum testified further that the blood stains found on appellant's pants were type or group "B", as were the stains on his jockey shorts. Mr. Landrum stated that the test on the shorts also revealed the presence of human semen. Further testing of blood samples revealed that the appellant's girl friend, Frances May Jones, had blood type or group "O", and the appellant's blood was type or group "AB". Mr. Landrum also testified as to the various methods and procedures used in typing and grouping blood samples.

The appellant presented four witnesses in his defense. Zolar Jones, the brother of Frances May Jones, the appellant's girl friend, testified that the appellant was at his house in Woodmont from 11:30 Friday, June 21, until around 3:00 in the morning of June 22nd.

Frances Jones testified that she saw the appellant at a party around 10:00 o'clock Friday night and that he stayed at her house from 11:30 Friday night until 3:00 o'clock Saturday morning. She testified that during that time she had sexual intercourse with the appellant. However, Miss Jones also stated that when Detective Fields asked her whether or not she had sex that night with the appellant, she had said no. On cross-examination it was revealed that at the preliminary hearing she also denied having had sex with the appellant on the Friday night or Saturday morning in question.

Theodore Johnson, the appellant, testified in his own behalf that he was at his girl friend's house from 11:00 p. m., June 21, to 3:00 a. m. on June 22, and that he had sex with her at approximately 2:30. He stated also that referring to the Friday night bicycle incident, that he did not pull Aletha off the bicycle, he turned loose of her arm after being over by the car for a few minutes, and she got back on the bicycle with Tommy Jones and went home.

I

Appellant submits that it was error for the trial court to admit a statement obtained from the appellant on a Tuesday or Wednesday following his arrest when his *Miranda* rights had been given on Saturday. Appellant submits that he should have been given his *Miranda* rights again before the interrogation and that the custodial statement by Detective Fields, "are you aware of your rights," falls short of the requirements of *Miranda*.

The case of *Jones v. State*, 47 Ala.App. 568, 258 So.2d 910 (1972) in overruling *Davis v. State*, 44 Ala.App. 145, 204 So.2d 490 (1967) held it unnecessary for a defendant to be given *Miranda* warnings before each separate interrogation. Judge Almon speaking for this Court in that case stated:

"Whether the *Miranda* warning should be given before each interrogation must

depend upon the circumstances of each case. The length of time and the events which occur between interrogations are relevant matters to consider."

"In support of our conclusion see *In re Steven C.*, 9 Cal.App.3d 255, 88 Cal.Rptr. 97; *People v. Hill*, 39 Ill.2d 125, 233 N. E.2d 367; *Miller v. United States,* 396 F.2d 492 (8th Cir.); *Tucker v. United States*, 375 F.2d 363 (8th Cir.), cert. denied 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed. 2d 189.

"In *People v. Hill*, supra, the court stated: 'It should be made clear that once *Miranda*'s mandate was complied with at the threshold of the questioning it was not necessary to repeat the warnings at the beginning of each successive interview. To adopt an automatic second warning system would be to add a perfunctory ritual to police procedures rather than providing the meaningful set of procedural safeguards envisioned by *Miranda.*' "

See also *McBee v. State*, 50 Ala.App. 622, 282 So.2d 62 (1973).

The United States District Court for the Southern District of California held that even though three (3) days had passed since the appellant was given his *Miranda* warnings by an officer, it was not mandatory that he be fully apprised or advised of those rights again before interrogation. *Maguire v. United States*, 396 F.2d 327 (9th Cir. 1968) cert. denied 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (1969). Where the *Miranda* warning was given two days before the questioning, see *Puplampu v. U. S.*, 422 F.2d 870 (9th Cir. 1970).

*Allen v. State*, 53 Ala.App. 66, 297 So.2d 391, cert. denied 292 Ala. 707, 297 So.2d 399 (1974) (relied on in appellant's brief) states adequately the need of an appellant to be advised again of his constitutional rights where delay between the warning and questioning was excessive. In the *Al-*

*len* case, supra, Supernumerary Circuit Judge Clark states:

"As held in *Jones v. State,* 47 Ala.App. 568, 258 So.2d 910, relied upon in *McBee v. State,* 50 Ala.App. 622, 282 So.2d 62, *Miranda* warnings are not required to be given before each separate interrogation of a defendant after a valid waiver of his right has been made. Even so, the reasons that require *Miranda* warnings before an in-custody interrogation logically apply to an interrogation that takes place such a long period of time after warnings and waiver that under the circumstances it is to be reasonably concluded that defendant was not impressed thereby in making a confession. Intervening circumstances in various cases are necessarily variant, but *three weeks confinement* in jail under the circumstance shown in this case would seem to deprive the warnings and waiver of their previous efficacy." (Emphasis supplied).

The circumstances enumerated in *Allen* clearly distinguish it from the instant case. In the instant case the appellant, Theodore Johnson, was arrested Saturday afternoon and taken to jail. He was read his *Miranda* rights from a card on Saturday. The record states that he was questioned again on a "Tuesday or Wednesday" with Detective Fields asking him (appellant) if he was aware of his rights to which the appellant answered yes. We are of the opinion that in the instant case there was not such a lapse of time as to require the giving of *Miranda* rights again before the interrogation on that Tuesday or Wednesday after his arrest on Saturday. Nor were there any extraordinary circumstances which would merit the giving of those rights again.

II

The appellant contends that where the defense offered to "admit" to anything a colored photograph (State's Exhibit 30)

would show, that was relevant to the case, there would be no material fact in issue, and therefore the photographs would be inadmissible as inflammatory and prejudicial.

■ However, we conclude that the nude photographs taken of the deceased at the scene of the crime were admitted into evidence by the trial court without error. The photographs were introduced into evidence for the purpose of proving the nature of Aletha Haygood's death and to show that she died as a result of violent means.

In *Snow v. State*, 50 Ala.App. 381, 279 So.2d 552, cert. denied, 291 Ala. 798, 279 So.2d 558 (1973), Judge Harris, writing for a unanimous court, said:

"There was no error in admitting photographs of the deceased and of the *locus in quo* where the proper predicate was laid. It has been held many times that gruesomeness is not ground for excluding evidence consisting of photographs if it has a reasonable tendency to prove some material fact in issue or shed some light upon some material inquiry, and if it illuminates the issues in any way, even though possessing a tendency to inflame the minds of the jury . . . Such photographs are admissible as shedding light upon the character and location of the wounds on the body of the deceased though they constitute cumulative evidence upon a matter not disputed. . . . " (Citations omitted).

■ In courts today, the fact that a photograph is gruesome is alone no ground for excluding it from the evidence being presented. *Palmore v. State*, 283 Ala. 501, 218 So.2d 830 (1969). See also *Hall v. State*, 50 Ala.App. 666, 282 So.2d 104 (1973); *McHugh v. State*, 53 Ala.App. 473, 301 So.2d 238 (1974). A photograph is admissible in evidence if it tends to shed light on, strengthen, or illustrate the truth of other testimony or evidence. *Baldwin*

*v. State*, 282 Ala.. 653, 213 So.2d 819 (1968). Also in *Cook v. State*, 52 Ala. App. 159, 290 So.2d 228 (1974), Judge Harris, speaking for this Court stated:

"The fact that such evidence is cumulative does not affect its admissibility so long as it sheds light upon a material inquiry, illustrates the transaction at issue, or tends to elucidate the material facts under inquiry, and has a tendency to illustrate the severity of the assault. *Swindle v. State*, 27 Ala.App. 549, 176 So. 372; *Wilson v. State*, 31 Ala.App. 21, 11 So.2d 563; *Reedy v. State*, 246 Ala. 363, 20 So.2d 528; *Grissett v. State*, 241 Ala. 343, 2 So.2d 399."

### III

Appellant contends that it was reversible error of the trial judge to exclude a witness's answer to the defense attorney's question of whether or not appellant looked normal, and then to state that such was an illegal question.

However, from the record it appears that counsel was seeking to have the witness describe the appellant's appearance by asking did he appear "normal." The witness said, "yes," and the state objected and the court excluded the answer. After the objection was sustained, counsel then went right back into the appellant's appearance by asking the witness, "And did you notice what his appearance was?" Then the witness's following testimony was received as evidence without objection:

"Q. All right. And did you notice what his appearance was?

"A. Just like I said, just like it is now —he didn't look like he was mad or nothing like that. He just looked common, just looked like hisself. (sic)

"THE REPORTER: You say he did not look mad?

"THE WITNESS: I say he just looked common, you know, like he is looking right now.

"MR. CHANDLER: He looked common?

"THE WITNESS: Yes, sir.

"THE COURT: She said he looked common, just like he looks now, is what she said."

The above testimony put squarely before the jury the answer the defense was seeking; that appellant appeared normal. Likewise, earlier in the trial the appellant's mother testified in essence that he appeared normal when he came home the night of the murder:

"Q. In other words, when you got up and let him in the door, did you observe his appearance?

"A. Well, he didn't look no different *from* me when he came in, from when he went out—if that is what you mean. I mean, he did not seem upset or nothing; he just was hisself. (sic)

"Q. Okay. And did his clothes appear to be unusual in any way?

"A. No, sir.

"Q. They looked like just when he went out, right?

"A. That's right."

■ We find no prejudicial error therefore in excluding the first reply where, in substance, the same answer was then admitted into evidence. Alabama Supreme Court Rule 45, Title 7, Appendix, Code of Alabama 1940, as amended.

We can find no reversible error where the trial judge commented that the question asked by appellant's counsel was an illegal question.

Appellant cites several authorities in his brief for the proposition that the trial court's remarks were prejudicial and thus reversible. However we find many cases which do not support appellant's conten-

tion. The Alabama Supreme Court in the 1908 case of *Watson v. State*, 155 Ala. 9, 46 So. 232, held that it was not prejudicial for the trial court to have instructed a witness that, "you need not answer that question," and then say to defense counsel:

" 'I don't like to hear as intelligent counsel as represents the defendant ask such a question. They know, or should know, that the mere fact that the witness has been indicted for assault with intent to murder in no way impeaches said witness, and such evidence is not relevant.' . . . "

Nor was there error committed by the trial judge in *Myers v. Town of Guntersville*, 21 Ala.App. 559, 110 So. 52 (1926) by admonishing and rebuking defense counsel by saying:

". . . You have asked that enough; you just want to drag them around from first one thing to another."

In conclusion, the trial court in *Vaughn v. State*, 236 Ala. 442, 183 So. 428 was not held to be in error for telling the defense counsel, "I don't want to hear from you any more on that subject;" for ordering counsel to sit down; for voluntarily again stating to counsel not to go further into a matter; and for later threatening counsel with punishment if he did not stop going into that subject.

■ The trial court's comment that an attorney's question is "illegal" is hardly reversible error pursuant to a long line of decisions in Alabama bearing upon permissible comments by trial judges. We find nothing improper in the use of the trial judge of the term "illegal question." In *Butler v. State*, 55 Ala.App. 421, 316 So.2d 348; cert. denied 294 Ala. 754, 316 So.2d 355 (1975) we held it not to be reversible error where the trial court told the defense attorney to, "proceed with something that's legal," and when counsel commented he

was trying to do that, the trial court stated, "[w]ell, I haven't seen any evidence of it yet."

We have searched the record for error prejudicial to the appellant and find none.

Affirmed.

All the Judges concur.