COURT
 OF APPEALS
                                       
 SECOND DISTRICT OF TEXAS
                                                   
 FORT WORTH
  
  
                                        
 NO. 2-05-133-CR
  
  
 RODNEY JAMES MILLER                                                      
 APPELLANT
  
                                                   
 V.
  
 THE STATE OF TEXAS                                                               
 STATE
  
                                              
 ------------
  
        
 FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT
 COUNTY
  
                                              
 ------------
  
                                
 MEMORANDUM
 OPINION[1]
  
                                              
 ------------




 Appellant Rodney James Miller
 appeals his conviction for possession of methamphetamine of 400 grams or more
 with the intent to deliver. The jury  found
 Appellant guilty, and the trial court sentenced him to twenty-eight years= confinement.  In five
 points, Appellant asserts that the trial court committed reversible error by
 failing to suppress his confession, by admitting the drugs seized at his house
 because the search was based on an invalid search warrant affidavit, by
 admitting into evidence Appellant=s prior
 conviction for impeachment, by failing to submit the lesser included offense
 of possession four to two hundred grams of a controlled substance, and by
 refusing to allow evidence of his cooperation with law enforcement. 
 We affirm.
 FACTUAL BACKGROUND
 On September 11, 2003,
 surveillance officers spotted Appellant leaving the home of a drug dealer and
 requested that a uniformed officer conduct a traffic stop on Appellant if the
 officer observed him committing a traffic offense. 
 Following a traffic stop, during which Appellant was arrested, officers
 determined that the car belonged to Katy Miller, Appellant=s wife and a
 passenger in the car.  The officers
 obtained Miller=s permission
 to search the car and found $6,087 in cash, a glass pipe containing a
 substance that appeared to be burnt methamphetamine residue, marijuana, and
 methamphetamine.  Miller was
 arrested for possession of a controlled substance.




 On September 11, 2003,
 Investigator Stan Davis approached Appellant about becoming a ACooperating Individual@ for police (hereinafter Aconfidential informant@).  Appellant initially
 rejected Investigator Davis= offer, but
 then on September 12, 2003, Appellant requested to meet with Investigator
 Davis for a second time.  In
 exchange for a dismissal of the charges against Appellant and Miller,
 Appellant agreed to become a confidential informant. 
 Appellant met with officers on September 16, 2003, and made a statement
 implicating himself in a crime.  Based
 on this information, officers obtained a search warrant for Appellant=s residence, confiscated 1300 grams of methamphetamine from his house,
 and arrested him.  A more detailed
 rendition of the facts is set forth below in the discussion of suppression of
 the evidence.
 SUPPRESSION OF EVIDENCE
 In his first point, Appellant
 asserts that the trial court committed reversible error by failing to suppress
 his confession because the confession was obtained in violation of Miranda.[2] 
 In his second point, Appellant contends that the trial court erred by
 admitting the drugs seized at his house because the search warrant affidavit
 was based on illegally obtained evidence.
 1. Standard of Review




 We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
 of review.  Carmouche v. State,
 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d
 85, 89 (Tex. Crim. App. 1997).  In
 reviewing the trial court=s decision,
 we do not engage in our own factual review. 
 Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
 v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
 trial judge is the sole trier of fact and judge of the credibility of the
 witnesses and the weight to be given their testimony. 
 State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State
 v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
 Therefore, we give almost total deference to the trial court=s rulings on (1) questions of historical fact and (2) application‑of‑law‑to‑fact
 questions that turn on an evaluation of credibility and demeanor. 
 Johnson v. State, 68 S.W.3d 644, 652‑53 (Tex. Crim. App.
 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial
 court=s rulings do not turn on the credibility and demeanor of the witnesses,
 we review de novo a trial court=s rulings on mixed questions of law and fact. 
 Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson,
 68 S.W.3d at 652‑53.
 When reviewing a trial court=s ruling on a mixed question of law and fact, the court of appeals may
 review de novo the trial court=s application of the law of search and seizure to the facts of the
 case.  Estrada, 154 S.W.3d
 at 607.  When there are no explicit
 findings of historical fact, the evidence must be viewed in the light most
 favorable to the trial court=s ruling. 
 Id.




 We must uphold the trial court=s ruling if it is supported by the record and correct under any theory
 of law applicable to the case even if the trial court gave the wrong reason
 for its ruling.  Armendariz v.
 State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
 541 U.S. 974 (2004); Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d
 at 543.  
 2. Evidence Presented
 Appellant was arrested on
 September 11, 2003.  That day,
 Investigator Davis interviewed him in the jail. 
 Before the conversation, Investigator Davis read Appellant his Miranda
 rights.  Investigator Davis then
 discussed the facts of his arrest and asked Appellant whether he wanted to Ahelp himself out with@ the charges that were pending against him. 
 Appellant declined Investigator Davis= request that he become a confidential informant on that day.
 On September 12, 2003, jail
 personnel informed Investigator Davis that Appellant requested to speak with
 him again.  Investigator Davis met
 with Appellant, and Appellant signed an agreement with Investigator Davis to
 become a confidential informant.  The
 confidential informant agreement did not contain Miranda warnings, but
 Appellant testified that he was read his Miranda rights before he met
 with Investigator Davis for the second time.




 On September 16, 2003,
 Investigator Davis contacted Appellant and requested that he meet him in a
 parking lot of a home improvement store to discuss what Appellant Aknew in the drug world and what he would be able to do for [the police
 officers].@ 
 Additionally, Drug Enforcement Administration Officer George Courtney
 requested that Investigator Davis contact Appellant because Appellant had been
 seen at the house of Manny Cortez and Officer Courtney, who had been
 investigating Cortez, was interested in learning information about Cortez from
 Appellant.  Appellant arrived at
 the specified location with his wife in his car. 
 Appellant got into Investigator Davis= vehicle with Investigator Davis, Officer George Courtney, and Tarrant
 County Narcotics Officer Chad Peabody.
 During the course of the
 interview, Appellant=s cell phone
 kept ringing. Officer Courtney asked Appellant who was calling, and Appellant
 informed them that a man by the name of Mike Nichols was calling him from a
 certain phone number belonging to Britney Smart. 
 In the course of Officer Courtney=s investigation of drug trafficking, the name Mike had come up, as well
 as the name Britney Smart.  Therefore,
 Officer Courtney asked Appellant why Nichols was contacting him. 
 Appellant responded that Nichols was calling to inquire about $5,000
 cash that Manny Cortez gave to Appellant the previous day in exchange for a
 pound of methamphetamine for the delivery he had made on September 11, 2003.




 Investigator Davis then
 explained to Appellant that he had violated his confidential informant
 agreement that he signed by conducting an illegal act without his approval and
 because it was a violation of the agreement to continue an offense while being
 under contract as a confidential informant. Investigator Davis then exited the
 vehicle to advise his supervisor that Appellant had told him that he had
 obtained a large sum of money from drug proceeds and that the money was at
 Appellant=s house. 
 Investigator Davis testified that he became suspicious that Appellant
 might have something else at the house. He returned to the vehicle and asked
 Appellant whether he had any drugs at his house. 
 Appellant responded that he had four pounds of methamphetamine there.
 Investigator Davis related
 this information to his supervisor in order to obtain a search warrant for
 Appellant=s house. 
 Investigator Davis read Appellant=s wife her Miranda rights, informed her about the conversation
 that he had with Appellant, and told her that he was in the process of
 obtaining a search warrant for her residence. 
 The officers then went to Appellant=s house with Appellant and his wife and secured the location while they
 waited for a search warrant.  Upon
 searching Appellant=s house, the
 officers found containers and plastic bags containing what appeared to be a
 controlled substance, which was later identified as methamphetamine weighing a
 total of 1300 grams.  Only after
 Appellant showed the officers the location of the methamphetamine and money
 did they inform him of his Miranda rights.
  




 3. Custodial Interrogation
 The prosecution may not use
 statements, whether exculpatory or inculpatory, stemming from custodial
 interrogation of the defendant unless it demonstrates the use of procedural
 safeguards effective to secure the privilege against self‑incrimination. 
 Miranda, 384 U.S. at 444, 86 S. Ct. at 1612. 
 Additionally, article 38.22 of the code of criminal procedure applies
 only to statements made as a result of a custodial interrogation. 
 See Tex. Code Crim. Proc.
 Ann. art. 38.22 (Vernon 2005) (providing that no statement made as a
 result of a custodial interrogation shall be admissible against the accused in
 a criminal proceeding unless, among other things, prior to the giving of the
 statement, the statutory warnings are administered to the accused). 
 Custodial interrogation is
 questioning initiated by law enforcement officers after a person has been
 taken into custody or otherwise deprived of his freedom of action in any
 significant way.  Miranda,
 384 U.S. at 444, 86 S. Ct. at 1612. If an investigation is not at an
 accusatorial or custodial stage, a person=s Fifth
 Amendment rights have not yet come into play and the voluntariness of those
 rights is not implicated.  Melton
 v. State, 790 S.W.2d 322, 326 (Tex. Crim. App. 1990). 




 Four factors are relevant to
 determining whether a person is in custody: (1) probable cause to arrest, (2)
 subjective intent of the police, (3) focus of the investigation, and (4)
 subjective belief of the defendant.  Dowthitt
 v. State, 931
 S.W.2d 244, 254 (Tex. Crim. App. 1996). 
 Under Stansbury v. California, factors two and four have become
 irrelevant except to the extent that they may be manifested in the words or
 actions of police officers; the custody determination is based entirely upon
 objective circumstances.  Dowthitt,
 931 S.W.2d at 254; Stansbury v. California, 511 U.S. 318, 322‑23,
 114 S. Ct. 1526, 1528‑29 (1994).  Becoming
 the focus of the investigation does not equate to custody for purposes of
 determining whether a statement is voluntarily given. 
 Meek v. State, 790 S.W.2d 618, 621 (Tex. Crim. App. 1990).




 As a general rule, when a
 person voluntarily accompanies law enforcement to a certain location, even
 though he knows or should know that law enforcement suspects that he may have
 committed or may be implicated in committing a crime, that person is not
 restrained or Ain custody.@  Livingston v. State,
 739 S.W.2d 311, 327 (Tex. Crim. App. 1987), cert. denied, 487 U.S. 1210
 (1988).  More specifically, so long
 as the circumstances show that a person is acting only upon the invitation,
 request, or even urging of law enforcement, and there are no threats, either
 express or implied, that he will be taken forcibly, the accompaniment is
 voluntary, and such person is not in custody. 
 Anderson v. State, 932 S.W.2d 502, 505 (Tex. Crim. App. 1996),
 cert. denied, 521 U.S. 1122 (1997).  However,
 the mere fact that an interrogation begins as noncustodial does not prevent
 custody from arising later; police conduct during the encounter may cause a
 consensual inquiry to
 escalate into custodial interrogation. 
 Ussery v. State, 651 S.W.2d 767, 770 (Tex. Crim. App. 1983).
 There are at least four
 general situations in which a suspect=s detention may constitute custody: 
 (1) when the suspect is physically deprived of his freedom of action in
 any significant way, (2) when a law enforcement officer tells the suspect that
 he cannot leave, (3) when law enforcement officers create a situation that
 would lead a reasonable person to believe that his freedom of movement has
 been significantly restricted, and (4) when there is probable cause to arrest[3]
 and law enforcement officers do not tell the suspect that he is free to leave. 
 Dowthitt, 931 S.W.2d at 255. 
 Stansbury indicates that in the first through third situations,
 the restriction upon freedom of movement must 




 amount to the degree associated with an arrest as
 opposed to an investigative detention.  Id.
  Concerning the fourth
 situation, the officers= knowledge of probable cause must be manifested to the subject, and
 such manifestation could occur if information sustaining the probable cause is
 related by the officers to the suspect or by the suspect to the officers. 
 Id.; see Ruth v. State, 645 S.W.2d 432, 436 (Tex. Crim.
 App. 1979) (holding that a suspect=s Astatement
 that he had shot the victim immediately focused the investigation on him and
 furnished probable cause to believe that he had committed an offense; [a]fter
 that time, the continued interrogation must be considered a custodial one@).  However, situation four
 will not automatically establish custody; rather, custody is established if
 the manifestation of probable cause, combined with other circumstances, would
 lead a reasonable person to believe that he is under restraint to the degree
 associated with an arrest.  Dowhitt,
 931 S.W.2d at 255.  Additionally,
 the length of time involved is an important factor to consider in determining
 whether a custodial interrogation occurred. 
 Id. at 256.




 The record reflects that
 Appellant voluntarily met police officers in the parking lot of the home
 improvement store.  Appellant
 arrived at the request of the officers, and he was not handcuffed. 
 The fact that Appellant brought his wife to the meeting demonstrates
 that he did not believe he was under arrest at the time he met with the
 officers to discuss how he would be able to assist the officers as a
 confidential informant.  Initially,
 the police encounter was noncustodial.  See
 Anderson, 932 S.W.2d at 505.




 Officer Courtney then
 questioned Appellant regarding the phone calls that he was receiving, and
 Appellant informed him that Mike Nichols was calling him from a phone number
 belonging to Britney Smart.  Officer
 Courtney had come across these names through the course of his investigation,
 so Officer Courtney  asked
 Appellant why Nichols was attempting to contact him. 
 Appellant responded that Nichols was calling to inquire about the
 $5,000 cash that Cortez gave to Appellant the previous day in exchange for a
 pound of methamphetamine that Appellant had delivered to Cortez on September
 11, 2003.  Once Investigator Davis
 received that information, he informed Appellant that he had breached his
 confidential informant agreement that he had signed by conducting an illegal
 act without his approval.  At that
 point, Appellant had become the focus of the investigation, and he had relayed
 information to officers that amounted to probable cause to arrest. 
 This would lead a reasonable person to believe that his freedom of
 movement has been restricted in a significant degree.  See
 Dowthitt, 931 S.W.2d at 255.  Thus,
 Appellant was in custody when Investigator Davis subsequently asked whether he
 had any drugs located at his house and Appellant informed him that he had four
 pounds of methamphetamine located there.
 4. Compliance with Miranda
 The safeguards established in Miranda
 come into play when a person in custody is subjected to either express
 questioning or its functional equivalent. 
 Rhode Island v. Innis, 446 U.S. 291, 300, 100 S. Ct. 1682, 1689
 (1980).  A confession may be deemed
 Ainvoluntary@ under three different theories: (1) failure to comply with article
 38.22, (2) failure to comply with the dictates of Miranda, or (3)
 failure to comply with due process or due course of law because the confession
 was not freely given as a result of coercion, improper influences, or
 incompetency.  Wolfe v. State,
 917 S.W.2d 270, 282 (Tex. Crim. App. 1996). 
 The burden of proof at the hearing on admissibility is on the
 prosecution, which must prove by a preponderance of the evidence that the
 defendant=s statement
 was given voluntarily.  Alvarado
 v. State,  912 S.W.2d 199, 211
 (Tex. Crim. App. 1995).  The trial
 court determined that Appellant voluntarily gave the statements to police.




 Appellant was given his Miranda
 warnings by Investigator Davis on September 12, 2003, the day that he agreed
 to become a confidential informant.  Therefore,
 we must determine whether these Miranda warnings were still effective
 for the September 16, 2003 meeting with Investigator Davis. 
 Appellant cites Jones v. State for the proposition that Miranda
 warnings given to Appellant prior to September 16, 2003, were too remote,
 but the State asserts that Jones actually supports the State=s position on appeal.  See
 119 S.W.3d 766, 771 (Tex. Crim. App. 2003).




 In Jones, an officer
 read the appellant read his Miranda rights during the first interview
 that was conducted on the day that he was arrested for the murder of Berthena
 Bryant.  Id. 
 The appellant denied involvement in the murder that he was arrested
 for, claiming an alibi.  Id. 
 The next day, after being informed of his Miranda rights again,
 he took a polygraph examination.  Id. 
 When the alibi information did not check out and the polygraph
 indicated deception, the officer again read him his Miranda rights. 
 Id.  Then, the
 appellant gave an incriminating statement. 
 Id.  Nine or ten days
 later, the appellant made statements to a Texas Ranger implicating himself in
 two extraneous murders, and he complained when these statements were
 introduced at the punishment phase of trial. 
 Id.  The court
 determined that the Miranda warnings from the previous interrogations
 did not apply to the Texas Ranger=s interrogation because he was not the same officer who had originally,
 or at any later time, given the appellant Miranda warnings, he
 questioned the appellant about an entirely different offense than the offense
 for which the appellant had been given Miranda warnings nine or ten
 days prior, and there was no evidence that he asked the appellant whether he
 had been warned by other officers.  Id.
 at 773-74 n.13.  Even in light of
 the passage of nine or ten days, the court noted that Athe cases cited by the concurrence are very appropriate to, and might
 well be dispositive of, this issue had the interrogation been [by the initial
 officer] about Ms. Bryant=s murder.@  Id. at 773 n.13
 (citations omitted).




 In the present case,
 Investigator Davis was the officer who read Appellant his Miranda
 rights on September 11, 2003.  Investigator
 Davis again read Appellant his Miranda rights during the September 12,
 2003 interview where Appellant agreed to become a confidential informant. 
 Although Appellant was not given his Miranda rights during the
 meeting on September 16, 2003, he met with the same officer who had read his Miranda
 rights only four days earlier.  The
 questioning on both occasions dealt with the same subjectBAppellant
 acting as a confidential informant.  There
 was no need for the officers to give additional Miranda rights before
 Investigator Davis conducted further discussions with Appellant regarding his
 roll as a confidential informant.  Maguire
 v. United States, 396 F.2d 327, 331 (9th Cir. 1968) (holding that warnings
 given three days prior not too remote when same offense and different
 officer); Gorman v. United States, 380 F.2d 158, 164 (1st Cir.1967)
 (holding that repetition of Miranda warnings before requesting consent
 to search unnecessary because there is Ano reason in policy or precedent automatically to borrow a procedure
 adapted to one set of constitutional rights at one stage of a criminal
 proceeding and apply it to a quite different right, serving quite different
 purposes, at another stage@); See Bagley, 509 S.W.2d 332, 335 (Tex. Crim. App. 1974)
 (stating that the same assistant district attorney gave multiple warnings and
 all questioning concerned one offense); Johnson v. State, 56 Ala. App.
 583, 558, 324 So.2d 298, 302 (Ala. Crim. App.), cert. denied, 295 Ala.
 407, 324 So.2d 305 (1975) (holding that warnings were not too remote when same
 officer, same offense, and reminder about warnings given three days earlier).
  Therefore, 
 we hold that the trial court did not abuse its discretion by admitting
 Appellant=s statements because they were not obtained in violation of Miranda. 
 Accordingly,  we overrule
 his first point. 
 In his second point, Appellant
 asserts that the trial court erred in admitting the drugs seized at Appellant=s house
 because the search warrant affidavit contained the oral statements that he
 made to the narcotics officers on September 16, 2003. 
 Because we determine that these statements were not obtained in
 violation of Miranda, we overrule Appellant=s second point.
  
  




 EVIDENCE OF APPELLANT=S PRIOR CONVICTION
 In his third point, Appellant
 complains that the trial court erred in admitting into evidence his prior
 conviction for impeachment purposes because 
 the probative value of his prior conviction did not outweigh the
 prejudicial effect of the admission.  The
 State asserts that the trial court did not abuse its discretion in admitting
 the impeachment evidence. 
 The State questioned Appellant
 about a final conviction for a felony offense of possession of a controlled
 substance of one gram or more but less than four grams on July 25, 1997. 
 Appellant acknowledged that he was convicted of the offense, and his
 counsel requested a limiting instruction from the court. 
 The court instructed the jury that the fact that a witness has been
 convicted of a felony crime in the past is admissible solely for purposes of
 attacking the credibility of the witness and informed the jury members that
 they are not to consider such evidence as tending to prove or proving the
 guilt of the defendant for the offense for which he was on trial.




 The standard of review for a
 trial court=s admission
 of evidence is abuse of discretion, and wide discretion is afforded to the
 trial judge.  Theus v. State,
 845 S.W.2d 874, 881 (Tex. Crim. App. 1992) (en banc). The trial court=s decision should be reversed on appeal only if there is a showing of a
 clear abuse of discretion.  Id. at
 881.  Only if the court=s decision falls outside the Azone of reasonable disagreement,@ has it abused its discretion.  Rankin
 v. State, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh=g); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
 1991) (op. on reh=g).
 Generally, a defendant who
 testifies may be impeached by evidence of a prior conviction if the crime was
 a felony or involved moral turpitude and the court determines that the
 probative value of admitting the evidence outweighs its prejudicial effect. 
 Tex. R. Evid. 609(a); Theus,
 845 S.W.2d at 879.  Both Appellant
 and the State cite Theus as controlling authority on the admissibility
 of this conviction for impeachment purposes. 
 See 845 S.W.2d at 879.  In
 Theus, the court of criminal appeals set forth five nonexclusive
 factors the trial court should consider in the application of Rule 609 and in
 weighing the probative value of a prior conviction against its prejudicial
 effect, including: (1) the impeachment value of the prior crime, (2) the
 temporal proximity of the past crime relative to the charged offense, and the
 witness= subsequent history, (3) the similarity between the past crime and the
 offense being prosecuted, (4) the importance of the defendant=s testimony, and (5) the importance of the credibility issue. 
 Id. at 880.




 Crimes that involve deception
 have a higher impeachment value than crimes involving violence, the latter
 having a higher potential for prejudice.  Id.
 at 881.  The State questioned
 Appellant regarding his prior conviction for possession of a controlled
 substance.  Possession of a
 controlled substance does not involve untruthfulness or deception; thus, the
 first factor weighs against its admission. 
 See Dale v. State, 90 S.W.3d 826, 830 (Tex. App.CSan Antonio 2002, pet. ref=d).
 Also, the second factor will
 favor admission if the past crime is recent and if the witness has
 demonstrated a propensity for running afoul of the law. 
 Theus, 845 S.W.2d at 881.  Appellant=s prior
 conviction for a controlled substance became final on July 25, 1997, when
 Appellant=s probation
 was revoked, and it occurred recently relative to the instant offense, which
 occurred on September 16, 2003.  See
 id. (stating that conviction for arson that was final in 1985 was recent
 to the current offense that occurred in 1990). 
 Additionally, the fact that Appellant=s probation for the prior conviction for a controlled substance was
 revoked because Appellant failed a urinanalysis demonstrates that Appellant
 has a propensity for running afoul of the law.




 The similarity between
 Appellant=s prior
 conviction for possession of a controlled substance and the instant offense of
 possession of a methamphetamine with intent to deliver militates against the
 admission of the prior conviction.  See
 id.  However, the trial court
 gave a prompt limiting instruction, which minimizes the prejudice associated
 with this factor.  See Simpson
 v. State, 886 S.W.2d 449, 453  (Tex.
 App.CHouston [1st Dist.]1994, pet. ref=d); see also Gamez v. State, 737 S.W.2d 315, 324 (Tex. Crim.
 App. 1987) (stating that it must be presumed that the jury followed the court=s charge).
 The last two factors are
 related, because both depend on the nature of a defendant=s defense and the means available to him of proving that defense. 
 When the case involves the testimony of only the defendant and the
 State=s witnesses, the importance of the defendant=s credibility and testimony increases. Theus, 845 S.W.2d at 881. 
 As the importance of the defendant=s credibility escalates, so will the need to allow the State an
 opportunity to impeach the defendant=s credibility.  Id.  However,
 in situations where a defendant presents an alibi defense and can call other
 witnesses, the defendant=s credibility is not likely to be a critical issue. 
 Id.




 Although Appellant=s father took the stand to testify on Appellant=s behalf, the substance of his testimony related exclusively to a phone
 call he received from Appellant when Appellant was in jail on September 11,
 2003.  His father did not testify
 as to any alibi, nor did he testify that Appellant was not in possession of
 the methamphetamine that was found in Appellant=s house on September 16, 2003.  Additionally,
 the State declined to cross-examine Appellant=s father.  Thus, although
 the case did not involve solely the testimony of the defendant and the State=s witnesses, the fourth factor weighs in favor of the admission of the
 conviction because Appellant=s credibility remained a critical issue and the importance of his
 testimony increased.  This
 proposition is also bolstered by the fact that 
 Appellant=s testimony
 at trial differed greatly from the officer=s testimony at trial.  Accordingly,
 the need to allow the State the opportunity to impeach Appellant=s credibility
 escalated.  See id.
 The only factor weighing
 against admissibility of the evidence is the lack of impeachment value of the
 prior conviction.  Therefore, we
 hold that the trial court did not abuse its discretion by allowing the State
 to present evidence of Appellant=s prior
 conviction for impeachment purposes.  We
 overrule Appellant=s third
 point.
 LESSER INCLUDED OFFENSE
 INSTRUCTION




 In his fourth point, Appellant
 contends that the trial court erred by failing to submit a jury instruction on
 the lesser included offense of possession of less than four hundred grams of
 methamphetamine.  Appellant argues
 that the basis for his complaint is his testimony that he took one or two
 grams of methamphetamine for his personal use, but the remainder of the
 methamphetamine that officers found at his house belonged to someone else.       
 We use a two-pronged test to determine whether a defendant is entitled
 to an instruction on a lesser included offense. 
 Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), cert.
 denied, 510 U.S. 919 (1993); Royster v. State, 622 S.W.2d 442, 446
 (Tex. Crim. App. 1981).  First, the
 lesser included offense must be included within the proof necessary to
 establish the offense charged.  Salinas
 v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); 
 Rousseau, 855 S.W.2d at 672-73; Royster, 622 S.W.2d at
 446.  Second, some evidence must
 exist in the record that would permit a jury to rationally find that if
 appellant is guilty, he is guilty only of the lesser offense. 
 Salinas, 163 S.W.3d at 741; Rousseau, 855 S.W.2d at
 672-73; Royster, 622 S.W.2d at 446. 




 A lesser included offense is
 defined both in terms of the offense charged and the facts of the case: 
 AAn offense is a lesser included offense if . . . it is established by
 proof of the same or less than all the facts required to establish the
 commission of the offense charged.@  Tex. Code Crim. Proc. Ann. art. 37.09(1) (Vernon 1981). 
 Therefore, our analysis of whether an offense is a lesser included
 offense of the charged offense must be made on a case-by-case basis. 
 Bartholomew v. State, 871 S.W.2d 210, 212 (Tex. Crim. App.
 1994); Day v. State, 532 S.W.2d 302, 315-16 (Tex. Crim. App. 1976) (op.
 on reh=g).  It does not matter if
 the charged offense can be established on a theory that does not contain the
 lesser offense; the issue is whether the State, when presenting its case to
 prove the offense charged, also includes proof of the lesser included offense
 as defined in article 37.09.  See
 Bartholomew, 871 S.W.2d at 212; Broussard v. State, 642 S.W.2d 171,
 173 (Tex. Crim. App. 1982).
 Article 37.09, in relevant
 part, states that an offense is a lesser‑included offense if Ait is established by proof of the same or less than all the facts
 required to establish the commission of the offense charged.@  Tex. Code Crim. Proc. Ann. art. 37.09. 
 The only difference between possession and possession with intent to
 deliver is the element of intent to deliver. 
 The evidence that a defendant was in physical possession and control of
 the controlled substances are facts that are also necessary to establish the
 charged offense of possession with intent to deliver. 
 Pickens v. State, 165 S.W.3d 675, 679 (Tex. Crim. App. 2005). 
 The lesser offense of possession could be proved by the same facts
 necessary to establish possession with intent to deliver. 
 Id.  Additionally,
 the facts required to prove that Appellant possessed less than 400 grams of
 methamphetamine are the same facts required to prove that Appellant possessed
 more than 400 grams of methamphetamine.  Therefore,
 the first requirement has been met. 




 Secondly, evidence must exist
 in the record that would permit a jury to rationally find that if the
 appellant is guilty, he is guilty only of the lesser offense. 
 Salinas, 163 S.W.3d at 741. 
 When conducting a lesser-included-offense analysis, a statement made by
 a defendant cannot be plucked out of the record and examined in a vacuum. 
 Ramos v. State, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993). 
 Appellant=s testimony as a whole established that he was in possession of the
 entire four pounds.  Although he
 contends that the methamphetamine belonged to another person, the record
 establishes that the four pounds of methamphetamine were unquestionably
 located at his house and that he had  care,
 custody, and control of the methamphetamine. 
 See Salazar v. State, 95 S.W.3d 501, 504 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d) (stating that in order to prove possession, the State must prove (1)
 that the defendant exercised care, custody, control, or management over the
 contraband and (2) that the defendant knew that what was possessed was
 contraband).  Additionally,
 Appellant acknowledged that the amount of methamphetamine that officers found
 at his house would not be consistent with personal use. 
 Thus, the record does not establish that if Appellant is guilty, he is
 guilty only of the lesser offense.  Accordingly,
 we overrule Appellant=s fourth point.
 EVIDENCE OF WILLINGNESS TO
 FURTHER COOPERATE WITH POLICE




 In his fifth point, Appellant
 asserts that the trial court erred in refusing to allow him to present
 evidence of his cooperation with state and federal authorities after his
 indictment to show his intention to abide by the confidential informant
 agreement. 
 We review a trial court=s ruling to admit or exclude evidence under an abuse of discretion
 standard.  Rankin, 974
 S.W.2d at 718; Montgomery, 810 S.W.2d at 391. 
 If the court=s decision
 falls outside the Azone of
 reasonable disagreement,@ it has
 abused its discretion.  Rankin,
 974 S.W.2d at 718; Montgomery, 810 S.W.2d at 391.
 Citing Crenshaw v. State,
 Appellant contends that the testimony regarding his willingness to further
 cooperate with police after he was arrested is admissible to correct a false
 impression.  See 125 S.W.3d
 651, 656 (Tex. App.CHouston [1st
 Dist.] 2003, pet. ref=d) (stating
 that if a witness creates a false impression of law abiding behavior, she Aopens the door@ on her
 otherwise irrelevant past criminal history, and opposing counsel may expose
 the falsehood).  Evidence that is
 otherwise inadmissible may be admitted to correct a false impression left by
 the questioning of a witness.  Wheeler
 v. State, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002). 




 Appellant argues that Athe State went to great lengths to show that Appellant violated his
 confidential informant agreement and implied that he never intended to comply
 with it.@  He then argues that the
 evidence that he continued to comply with the agreement even after he was
 arrested and indicted should have been admitted into evidence in order to
 correct a false impression that the State had given to the jury. 
 He does not point to a single portion of the record where the testimony
 creates a false impression that he never intended to comply with the
 confidential informant agreement.
 Additionally, the evidence
 presented at trial shows that any impression on the part of the jury that
 Appellant violated the terms of the confidential informant agreement was a true
 impression, rather than a false impression. 
 The cooperating individual agreement that Appellant signed provides as
 follows:
 Any dealing, transfer, sale,
 or possession of any illegal drug, illegal controlled substance or marijuana
 by the Cooperating Individual without the express and current
 permission of the investigating officer or his supervisor will be
 considered not only a violation of the criminal laws of this State, but also a
 violation of the terms of this agreement. [Emphasis in original].
 The evidence presented shows that after Appellant
 signed this agreement, he obtained $5,000 in cash from a previous
 methamphetamine sales transaction, and he possessed approximately 1300 grams
 of methamphetamine. Accordingly, Appellant=s contention that the State presented a false impression that Appellant
 violated the cooperating individual agreement is without merit. 
 Therefore, the trial court acted within its discretion in refusing to
 admit the testimony that Appellant continued to cooperate with the police. 
 We overrule Appellant=s fifth
 point.




 CONCLUSION
 Having overruled Appellant=s five points, we affirm the judgment of the trial court. 
 PER CURIAM
  
  
 PANEL
 B: HOLMAN, DAUPHINOT, and GARDNER, JJ.
  
  
 DELIVERED: 
 May 4, 2006
 [ORDERED
 PUBLISHED JUNE 8, 2006]


 
 

 

 
 [1]See
 Tex. R. App. P. 47.4.
 
 
 [2]See
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).
 
 
 [3]Probable
 cause to arrest exists where, at that moment, the facts and circumstances
 within the knowledge of the arresting officer and of which he has reasonably
 trustworthy information would warrant a reasonable and prudent man in
 believing that a particular person has committed or is committing a crime. 
 Jones v. State, 493 S.W.2d 933, 935 (Tex. Crim. App. 1973).